Johnson *et al. vs.* The Griffin Banking and Trust Company *et al.*

LOUISA A JOHNSON *et al.*, plaintiffs in error, *vs.* THE GRIFFIN BANKING AND TRUST COMPANY *et al.*, defendants in error.

1. Land lawfully conveyed by absolute deed, with consent of the debtor's wife, to secure a debt, becomes the creditor's property, and neither the debtor himself, nor his family after his death, can take a homestead in the same, as against the creditor, until the debt is paid : Code, section 1969.

2. But usury in the contract under which the deed was executed, renders it void as title, and the homestead right remains as if the deed had not been made.

3. A legislative charter which grants to an incorporated company the power to contract, without limit, for commissions, in addition to the lawful interests, does not enable the corporation to take usury under the name of commissions : See *47 Georgia Reports, 82; 48 Ibid., 1.*

4. A title void for usury does not acquire validity by purging the debt on reducing it to judgment after the grantor's death.

5. A general decree for the recovery of money without subjecting any specific property to its payment, though rendered by consent in settlement of litigation, is not necessarily superior to the homestead right in property which was not directly involved in the litigation.

6 Pending an application for homestead, which is resisted by a judgment creditor who holds an absolute deed to the premises that, if valid, will defeat the application, which deed is attacked for usury by the applicant, a sale of the land by the sheriff to satisfy the judgment, should be enjoined until the right to homestead is determined.

Injunction. Debtor and creditor. Deed. Homestead. Usury. Title. Judgments. Before Judge HALL. Spalding county. At Chambers. June 5th, 1875.

Reported in the opinion.

BOYNTON & DISMUKE; HUNT & JOHNSON; D. J. BAILEY ; T. W. THURMAN, for plaintiffs in error.

SPEER & STEWART; E. W. BECK, for defendants.

BLECKLEY, Judge.

On the first of March, 1872, Johnson, the then husband of complainant, borrowed of defendant $1,500 00 and gave his acceptance, due on the first of November thereafter, for $1,722

74, expressing on the face thereof that it was for principal, interest and commissions of advancements then made to him for the purpose of buying supplies with which to raise a crop. At the same time, in order to secure payment of this acceptance, he executed a lien upon a mare and some mules and upon his crop of 1872, and also conveyed to defendant, by absolute deed in fee simple, a certain tract of land. Upon this deed his wife, the complainant, signed an indorsement, declaring that after having been made acquainted with the character and effect of the conveyance, she freely and voluntarily consented to, ratified, and approved the same. The defendant gave to Johnson a bond, conditioned to release and quit-claim to him, his heirs and legal representatives, all right, title and interest in the land, if the sum of $1,722 74 were paid to defendant by the first of November, 1872.

Johnson died. His widow and children took charge of the mules and the crop, she asserting a claim upon them for the year's support allowed by law to the family. The defendant filed a bill against her, setting up the lien and praying for a receiver. While that bill was pending her son procured letters of administration upon the estate of Johnson, her deceased husband, and was made a party defendant to the bill. Terms of settlement were agreed upon between him and the creditor, by which the latter consented to reduce the debt down to $1,500 00, the actual amount loaned, and legal interest thereon. For this amount a decree was rendered in favor of the creditor against the administrator, at August term, 1874, by consent. Execution issued upon the decree, and the creditor, after making a deed and having it recorded, (Code, section 1970,) caused the execution to be levied upon the land in April, 1875. In the meantime Mrs. Johnson, the complainant, had made application to the ordinary, in behalf of herself and her minor children, to have the land set apart as a homestead, she being the head of a family, and the value of the land being less than $2,000 00 in specie. Her application was made in August, 1873, one year prior to the decree, and at the time of the levy was still pending on ap-

peal in the superior court, the creditor having filed objections and made up an issue for trial under the statute. In May, 1875, the present bill was filed by Mrs. Johnson in behalf of herself and children, praying for an injunction to restrain the creditor and the sheriff from making sale under the levy. The chancellor refused the injunction. The positions taken in the bill are, that as the deed was made for security only, it did not bar the homestead right; that the complainant's consent to the deed was given without knowing the contents of the instrument or understanding its effect; and that the transaction was usurious, and the deed, therefore, void.

The allegations touching usury are not altogether definite. The bill charges, in one place, that the sum borrowed by Johnson was perhaps $1,500 00; and that after "certain charges of interest, discount and commissions" were added, the acceptance as given amounted to $1,722 27. In another place, it alleges that the deed was made as part of "a scheme devised to secure payment of the money advanced, with the usurious rate of interest incorporated therein, which renders said instrument void by reason of the usury." It is not stated anywhere in the bill what rate of interest was agreed upon, or what rate was charged, and this fact does not appear from the acceptance, the deed, or any of the papers or pleadings, except in so far as it may be suggested by comparing the amount of the loan with the amount of the acceptance.

The answer, admitting that the deed was taken for security only, alleges that it was taken in pursuance of the statute, (Code, section 1969,) and consequently passed title; it sets up that complainant's consent was given, as the statute requires; and, on the subject of usury, it presents a denial and urges a special provision in the legislative charter by which the defendant was incorporated in 1870. This provision grants power "to discount notes and drafts; to make advances to planters for the purpose of developing the agricultural interests of the state, in loans, on mortgages on real and personal property of any and all kinds, and upon crops to be raised; to receive deposits of money or valuables of any

kind; to buy and sell bonds and promissory notes, and advance and loan moneys, securities and credits, and *may charge, in addition to lawful interest, such a commission on advances of money and negotiating loans, as may be agreed upon between said company and the party or parties buying or selling such bonds, bills of exchange or promissory notes, or borrowing or receiving such moneys, securities or credits;* and * · *   to take and hold as security for, or in payment of, any loans or advances made, mortgages or other instruments or obligations upon any and all kinds of property whatever, either real or personal."

The answer avers, in substance, that no interest was charged on the loan as usury, but that the excess over lawful interest was commissions. It does not state at what rate, or for what service or consideration the commissions were charged; nor does it set out any express contract whatever touching the item of commissions. It insists that the decree taken threw off everything but principal and lawful interest; and it sets up that the complainant was benefited by the concessions made in the settlement under which that decree was rendered, and that, for that reason, and because she has consumed and enjoyed all the personalty, she ought to be estopped from hindering a collection of the decree out of the land.

In the argument counsel for complainant made no point on the fact or the sufficiency of her consent to the deed. Treating that deed as free from any taint of usury, it passed title out of Johnson into the defendant: Code, section 1969; *Carswell vs. Hartridge, page* 412. Therefore Johnfon did not die seized of the land. After he conveyed it away it was no longer his property. He never redeemed it, or complied with his contract to make it his own again. If he had lived, he could not have claimed it as a homestead. Granting that his wife and children, after his death, succeeded to all his rights, they surely took no more than his rights. He nor they, nor anybody else, can have homestead in what they do not own. It is competent for the legislature to declare on what consideration and by what conveyance the owner

Johnson *et al. vs.* The Griffin Banking and Trust Company *et al.*

of property, real or personal, may part with it.   On the score of morality and virtue, it is no less justifiable to secure a creditor than it is to pay him.   Whatever lawful security is agreed upon should be inviolable.   A creditor has the same right to his security—the security for which he has stipulated—as the debtor has to what he has borrowed or bought from the creditor.   All vested rights are equally sacred.   The creditor can not take what belongs to the debtor, nor can the debtor take what belongs to the creditor.   To deprive a creditor of what is honestly due him, or of the security which he lawfully holds for its payment, is as wicked as any other species of injustice. Why should not a man pay what he owes, and perform what he promises?   If he will not do so voluntarily, why should not society, through wholesome laws, compel him?   Fidelity to contracts is essential to private virtue and to public order and prosperity.   Its observance is alike the interest of all and the duty of all.   The olden spirit on this subject is returning, aud it will be good for the public weal when it is fully re-established.   Then there will be confidence and credit, security and progress, which need not be looked for before.   The act of 1871, (Code, section 1969,) is constitutional.   The constitution contains no inhibition upon making debts or upon securing them, so that the debtor uses his own property for the purpose.   Before his property is claimed as homestead and set apart, it is unconditionally his, and he can do with it as he pleases.   The legislature may prescribe how it may be mortgaged and how it may be absolutely conveyed.   Mortgages and conveyance are both creatures of law, and the effect of each may be declared by law.   Even a mortgage may be made superior to a future assertion of the homestead right, by express waiver on the part of the mortgagor.   See the case of *Simmons vs. Anderson,* decided at the present term.

2. But this deed is alleged to be void on account of usury. That is the real question in the case; and notwithstanding the defendant's denial, with an explanatory reference to the charter, the debt is so much in excess of the loan that, we think, there is cause for a more minute and circumstantial

showing how it came to be so than is given in the answer or elsewhere in the record. It has been ruled several times that a deed infected with usury does not pass title: *Sugart vs. Mays*, 54 *Georgia Reports*, 554, and *Carswell vs. Hartridge*, 55 *Ibid.*, 412; *Johnson & Smith vs. Wheelock*, decided at the present term.

3. We do not construe the defendant's charter as conferring any right to charge usury under the name of commissions. *Bona fide* commissions are not contrary to law: 47 *Georgia Reports*, 82; 48 *Ibid.*, 1. The charter neither repeals nor modifies the general law, existing at the time, in respect to usury; and if, in this case, the defendant made a mere pretext of charging commissions when there was nothing done to earn them, and when the real design was to add to the legal rate of interest, the device cannot succeed. On the other hand, any real, substantial contract for commissions which the parties entered into, and for which there was a foundation in the facts, ought to be upheld and enforced.

4. If there was usury in the contract out of which the deed came into existence, no purging after the death of the grantor would change the deed from a void into a valid title.

5. The decree was not against this land, and it was rendered without any contract with complainant as to how it should be satisfied.

6. The remedy by injunction is appropriate. It is best for both parties not to sell the land while this controversy is pending; and the bill contains prayers for relief, so that a decree upon it may put an end to the dispute. In the meantime, let the injunction be granted.

Judgment reversed.