WILLIAM ARCHER, plaintiff in error, *vs.* JAMES McCRAY, administrator, defendant in error.

1. Where U bought land from E, and borrowed from A money to pay in part therefor, and E, by agreement between all parties, made the title to A, who gave U bond for title on payment of the money borrowed and interest thereon, equity will decree a specific performance of the contract, and compel A to make title to U on the payment of principal and legal interest.

2. Where the original transaction was usurious, the usury infects all the securities given in renewal for the same debt, however varied in form and amount, and the law applies all payments made on the debt to the principal and legal interest; and though these payments be made on annual settlements, these annual accountings will not constitute a new point of departure from which the six month's limitation against the recovery of usury will begin to run—there having never been at

any time a purging of the usury from the old debt, and another security taken for the legal balance.

3. Where the original contract was usurious, and there was a novation by a new party being introduced into it one year, and such new party then is released by consent of all the others, and the old contract is renewed by the two original parties without any purgation of the usury:

*Held*, that the novation itself having been rescinded by the parties in interest, the renewal of the old usurious contract without purging it of the usury, left it affected still with the taint, and the law still applied the payments, both prior to and after the rescision, to the principal and legal interest alone

Equity. Specific performance. Usury. Contracts. Novation. Before Judge POTTLE. Hancock Superior Court. October Term, 1876.

William D. Underwood having died after the writ of error issued in this case, his administrator, James McCray, was made a party in this court in his stead.

For the facts, see the opinion.

C. W. DuBOSE; SEABORN REESE, for plaintiff in error.

GEORGE F. PIERCE, JR.; J. T. JORDAN, for defendant.

JACKSON, Judge.

This was a bill filed by Underwood against Archer, alleging that the complainant had purchased lands from one Ely, and borrowed $2,400.00 from Archer to complete the payment, the price being $3,500.00, and Underwood paying the balance himself. It was alleged that the deed was made by Ely to Archer so as to secure Underwood's debt to him, and that Underwood went into possession and gave rent notes to Archer to cover up the usury charged for the loan of the $2,400.00; that Underwood paid what he could from year to year, and sold part of the lands to help pay Archer, and had fully paid for the remainder of the land, if what he

paid was applied to principal and lawful interest; but that Archer charged sixteen per cent., covered up with the rent notes, and had levied a distress warrant for $1,300.00, which he claimed as still due from Underwood, and was enforcing it against the latter.

The prayer of the bill is for a specific performance of the parol agreement, and the making a deed by Archer to Underwood for the balance of the land, Underwood offering to pay what was legally due—principal and lawful interest— if any was due.

The defense set up was that Archer bought for himself, and denied the facts charged; that the claim of usury was barred because, by annual accountings between the parties, the usury was settled, and the statute limiting the recovery of any after six months, operated and barred the right to recover it at all; and that by a novation of the contract when one Hitchcock was taken in as joint purchaser and borrower with Underwood, all the usury before that time was purged in law, and none was charged and exacted afterwards.

1. The transaction, as set up by the bill, is abundantly proved by the evidence. The testimony is overwhelming that Underwood bought from Ely; that Archer never even saw the land, and was simply a lender of the money to Underwood, and took the title in himself to secure the loan at sixteen per cent. per annum interest, and gave bond every year to Underwood to make him title on paying the balance due. If all legally due was paid, then Underwood had the right to have title made him, for the transaction was but a mortgage. 46 *Ga.*, 202. The jury found that there was $178.32 due in gold, and decreed that Archer make Underwood a deed on his being paid that sum. They reached this result by finding the contract usurious, and applying all payments to principal and legal interest. We think that the evidence authorized the finding, unless the defendant, Archer, was protected by one or the other of his two remaining defenses.

2. The first of these remaining defenses is the statute of

limitations. We think that there is nothing in the statute, because there never was a final settlement or accounting between the parties so as to make a new departure from which the statute would run. The priciple was settled in 1 *Kelly*, 392, that when the original transaction was usurious, and several renewals have taken place, the infection of usury follows all the securities given for the same debt, however varied the form of renewals, and the amount paid on such renewals must be deducted from the sum first loaned. This principle covers the case now at bar, with the allowance of legal interest at seven per cent., which, at the time of that decision, was forfeited in case of usury as well as the illegal interest. There is no evidence of any settlement and purging of the usury here, and giving new security for the sum due after the transaction was purged of the taint. 54 *Ga.*, 190. Besides, this is not a suit to recover usury strictly, but only to have payments legally credited on a debt which Archer was trying to collect by distress warrant.

3. But it is said further in defense, that there was a novation when Hitchcock came into the contract in 1872, with Underwood, and assumed half the debt, and Archer gave bond for title to both and took their joint note for rent; and that all the usury paid before that time was purged in law by this new contract, the old contract being thereby extinguished. But the facts are, that Hitchcock was in only one year, and was to determine from that year's experience whether he would continue in the contract, and at its expiration he was dropped out by the consent of all parties, and the old transaction was renewed between Underwood and Archer—Archer again taking Underwood's individual note and giving him alone bond for titles. We think this amounted to a rescision of the Hitchcock intervention by Archer, and to a renewal of the old trade with Underwood alone with all its consequences, including the infection of usury, and that Archer can take nothing by this defense. There was no settlement at all between Hitchcock and Underwood, on the one hand, and Archer on the other, of the

past usury, nor was the old contract purged of it. Hitchcock never paid Archer a cent, but worked the land, giving note for rent with Underwood one year, and then dropped out by the agreement of all parties.

The fact is, that the law appropriates the payments Underwood made from time to time to principal and legal interest; the jury so calculated and found their verdict; the court so instructed them in charging the law, and so decreed upon the verdict rendered, and we think that the law and equity of the case have been enforced thereby.

Judgment affirmed.