## BROWN *vs.* BAER.*

In consideration of a promise by B. to A. to pay the latter seven per cent. interest and also a debt due him by others, B's promise thus amounting to an agreement to pay usury, A. agreed to lend B. money with which to purchase certain goods about to be sold at public outcry for cash by a receiver, if sold below a certain price.

*Simmons, J., being disqualified, Judge Lumpkin, of the Northern circuit, was designated to preside in his stead.

On the faith of this promise by A., B. bid off the goods at less than the price mentioned. A. refused to lend the money. B. consequently could not comply with his bid, and the goods were immediately resold by the receiver to another for less than B's bid, and he holds B. responsible for the difference and has sued B. for the same, the goods being actually worth more than B's bid: *Held,* that A's breach of the contract herein stated gives B no right of action for damages against A. (Head-note by the court.)

February 6, 1888.

Interest and Usury. Contracts. Sales. Actions. Before Judge SIMMONS. Bibb Superior Court. April Term, 1887.

Reported in the decision.

HILL & HARRIS; W. C. WINSLOW, for plaintiff in error.

HARDEMAN &. DAVIS; BACON & RUTHERFORD, for defendant.

LUMPKIN, Judge.

Brown brought against Baer an action for damages, his declaration making substantially the following case :

One Nottingham, as receiver of Brown Brothers, a mercantile firm recently in business at Fort Valley, of which plaintiff was not a member, had advertised for sale the stock of goods of said firm. The goods were divided into three lots, designated respectively, "the general stock," " Jaffray's goods" and "Hochstadter's goods," all of which had been invoiced at cost prices without freight, and were to be bid for and sold at so many cents on the dollar as invoiced. On the morning of the sale, and as a result of previous negotiations, the following agreement was made between Brown, the plaintiff, and Baer: "Baer agreed that petitioner should purchase all or as many of said goods as he wished to at said sale, provided his bids did not average over 75 cents on the dollar as invoiced, and that he (Baer) would immediately furnish the money with which said

Brown should make payment therefor in cash, according to the terms of said sale." Brown was to use the goods when bought, as aforesaid, in carrying on a mercantile business; was to secure Baer by a mortgage on the goods; pay him for the use of the money seven per cent., and also a debt of about $500.00, due Baer by Brown Brothers; and further, he was to employ to aid him in the business a clerk designated by Baer, who was to remain till the greater part of Brown's debt to Baer was paid.

The goods to be sold by the receiver were very valuable, and the arrangement with Baer afforded Brown an excellent opportunity to make a good investment and start a profitable business. Relying on Baer's promise, he bid off the "general stock" at 71 cents on the dollar, his bid amounting to more than $5,000. The receiver demanded immediate payment, and Baer refusing to furnish the money as he had agreed to do, Brown could not make payment and the goods were resold by the receiver in the afternoon of the same day, and bought by others at 50 cents on the dollar, it being then too late for Brown to make other arrangements to raise the money, as he might otherwise have done. The receiver holds Brown liable for the difference between his bid and the price at which the goods were actually sold, amounting to about $1,600, and has sued Brown for the same.

The "Jaffray goods" sold at 80 cents on the dollar. When the "Hochstadter goods" were put up, Baer told Brown it would be better for him (Baer) to bid them off, but that Brown should take them at his bid. They were accordingly knocked off to Baer at 62½ cents on the dollar, and he fraudulently, and in violation of his agreement, kept them, and refused to let Brown have them at all.

All said goods were actually worth the full amounts at which they were invoiced, as an investment, and by reason of Baer's violations of his several promises and undertakings, Brown lost the opportunity of establishing himself in a profitable business, lost the bargain he would have se-

cured in said goods, and was injured by the suit brought against him by the receiver, as aforesaid, to the extent of about $1,600, the amount of loss and liability thus thrown upon him.

In a second count, plaintiff alleges that defendant made the said several promises fraudulently, intending thereby to mislead and deceive him and prevent him from buying said goods, and that said Baer's purpose in so doing was to secure the same for himself.

The defendant filed a plea of the general issue.

The plaintiff then introduced certain testimony, the purpose of which was to show the contract between himself and defendant, and after this he was placed on the stand to testify in his own behalf, and a series of questions was propounded to him by the answers to which he expected to prove the actual wholesale value of the goods in question at Fort Valley, the retail value at that place, the usual per cent. on the wholesale value of goods when sold at retail, the usual cost incurred in selling goods, the time it would probably require to sell them, and other facts tending to show what net profit he might reasonably have expected to make on this stock if he had purchased it. These questions were objected to by defendant's counsel separately and as a series, and the court sustained the objection, refusing to allow the witness to answer each and every one of them as a separate and distinct question, and also to answer the same as a series designed to prove the damages alleged to have been sustained by the plaintiff.

The plaintiff further offered to prove (but was not allowed by the court to do so) that shortly after said receiver's sale, he had contracted with a firm in Savannah for certain merchandise, and that after he had been sued by said receiver for said $1,600, said firm refused to deliver said merchandise because of said suit. Also that he had a claim against said Brown Brothers, which was allowed as just by the master in chancery in the Federal court wherein the assets of said Brown Brothers were being ad-

ministered, but that said master refused to allow him his dividend thereon, amounting to about $100.00, because he had failed to comply with his bid at said receiver's sale; the plaintiff insisting that he was damaged by reason of these facts, and that the damage was directly the consequence of defendant's failure to comply with his alleged contract.

The plaintiff having no further evidence, the court directed a verdict for defendant. The rulings of the court below in rejecting the testimony the plaintiff sought to introduce, and in directing a verdict for defendant, amount to a decision that the plaintiff was not entitled to a recovery if all he alleged in his declaration was true. The question presented for determination by this court, therefore, is, do the facts set forth in the declaration make a case entitling the plaintiff to a verdict against the defendant for anything whatever?

It becomes important, in the first place, to understand exactly what the contract was between Baer and Brown, for the breach of which the latter claims damages. Baer's agreement was to lend Brown a sum of money to be used in purchasing merchandise about to be sold by the receiver, in consideration of an agreement on the part of Brown to pay him for the use of said money interest at the rate of 7 per cent., and a debt of $500 due Baer by Brown Brothers, also to secure Baer by a mortgage on the goods, and to allow a clerk, selected by Baer, to aid him in the business until the greater part of the indebtedness of Brown to Baer, thus created, had been paid. The amount of money which Baer would have been required to advance under this contract, would have been between five and six thousand dollars. If Baer received for the use of this money interest at 7 per cent. per annum, and in addition thereto $500, it is manifest that, unless under the agreement the debt was intended to mature some eight or ten years in the future, with no payment thereon in the meanwhile, the interest paid by Brown would be

usurious, because it would require that length of time for the amount in question to earn 7 per cent. and the $500, calculating interest on the principal at 8 per cent., the maximum legal rate. It is obvious from the declaration that the parties contemplated prompt and early payment by Brown, and that they never intended the credit which was to be extended to him should run for a long period of years. On the contrary, Baer was to be paid out of sales of the goods, and the clerk he was to send was to see to this, and remain only till out of the proceeds of the goods the greater portion of Brown's debt to him had been settled. It is not at all difficult, therefore, to perceive that, under the con templated arrangement, Baer was certainly contracting to receive and Brown to pay usurious interest. Besides, no contract to pay more than 7 per cent. interest is binding unless in writing. Is this, then, a contract for the breach of which by Baer Brown can maintain an action for damages? The contract was executory, the consideration for Baer's undertaking being that of Brown, and the consideration for Brown's being that of Baer. The promise made by Baer was not severable. It was one entire agreement to lend a sum of money. The consideration for this promise was partly legal and partly illegal, viz. a stipulation to pay 7 per cent. interest, and in addition thereto $500 more.

Section 2745 of the code provides : " If the consideration be good in part and void in part, the promise will be sustained or not according as it is entire or severable, as hereinafter prescribed. But if the consideration be illegal in whole or in part, the whole promise falls."

In 27 *Ga.* 571, Judge Benning says: " We find it frequently said by judges and law writers that if a part of the consideration of a contract be illegal, the contract is void, and the reason given is, that every part of a consideration is to be presumed to have had some effect in inducing the party recipient of the consideration to enter into the contract." The same principle is asserted on page

727 of Smith's Leading Cases, vol. I, part 2, as follows: " It is indeed clear that if a contract be made on several considerations, one of which is illegal, the whole promise will be void. This is upon the idea that every part of the contract is induced and affected by the illegal consideration."

Undoubtedly, in this case, the main moving consideration which induced Baer to promise to lend the money was the agreement by Brown to pay him the $500 due him by Brown Brothers. This is a most natural conclusion, and it is not at all reasonable to suppose he would have been willing to lend his money at simply 7 per cent. The section of the code, and other authorities above cited, settle conclusively the question under consideration, unless the word " illegal " is used therein in a restricted sense, and intended to apply only to contracts which are vicious, criminal or forbidden by public policy. Our statute designates the taking of usury as " an unlawful transaction," and it would not be a strained construction to hold that the word " illegal " in the above mentioned section of the code applies to such a transaction. It is not necessary, however, in this case to determine definitely whether it does or not.

The contract between Baer and Brown is bad for want of mutuality. If it had been fully executed, and Brown had actually repaid to Baer the principal with interest at 7 per cent., and also the $500, there can be no doubt that Brown could recover back from Baer every dollar paid him for the use of the money above what would be lawful interest; and as the contract was not executed, Baer would not be allowed to enforce it specifically against Brown, if he objected, for the reason that when the specific performance of a contract is decreed, it must necessarily be performed in all parts, and this could not be done in case of such a contract as this at Baer's instance against Brown's consent, because the latter would thus be compelled unlawfully to pay usurious interest. As the law would not

v 79-23

aid Baer in availing himself of the benefit of all the stip-ulations made in his favor, it would seem that it should not aid Brown in attempting to enforce the contract against Baer. If, then, an executory contract is not mutually and legally binding in all its parts between the parties, so that either would be allowed to fully and completely enforce it against the other, it follows that, for a breach thereof while the whole contract is yet executory, neither can sustain an action for damage.

Judgment affirmed.