## BISHOP *v.* EXCHANGE BANK.

1. An affidavit to the effect that the facts set forth in a plea are true is a sufficient verification.
2. Where a lender requires, as a condition precedent to making a loan upon which the full legal rate of interest is expressly charged, that the borrower shall assume and pay off a promissory note held by the lender against one who is known by the lender to be insolvent, and whose debt the borrower is under no obligation to pay, the transaction is usurious.
3. In a suit by the lender against the borrower, a plea setting up the above facts as constituting usury is good against a demurrer thereto.

Submitted February 18, — Decided March 12, 1902.

Complaint.   Before Judge Reid.   City court of Atlanta.   June 20, 1901.

*G. P. Roberts* and *T. L. Bishop,* for plaintiff in error.
*Rosser & Carter,* contra.

Simmons, C. J.   The Exchange Bank brought its action against Bishop as principal, and Johnson, administrator, whose intestate was surety, on a promissory note, dated August 18, 1898, for $1,961, with interest at 8 per cent. per annum from date, and 10 per cent.

attorney's fees.    Bishop  answered, admitting  the  execution  of the note, its date  and  amount, and that payment had been demanded and refused;  but alleging that when he applied to the bank for the loan  the president  informed  him  that  he  would  lend  the money, but that first Bishop must assume and pay off two notes for $58.63 each  by  the  bank  against one Sprayberry, who was totally insolvent  and whose  insolvency was well  known to the president of the bank; that the notes held by the bank against Sprayberry were in no way connected with Bishop's transaction with the bank, and that Bishop had no interest in them and was in no way bound, legally or morally, to pay them; but that the bank, through its president, for the  sole  purpose  of  charging usury, demanded that defendant should take up the notes and pay them off, the president knowing that the notes were totally worthless, Sprayberry having failed a year or so previously, owing this amount to the bank.    The answer further alleged that defendant was entitled to a credit on the note sued on, for the amount of the Sprayberry notes, with interest on  the latter from  the  time  he  paid them; that the de- mand and taking the payment of the said notes by the bank through its president was merely an evasion of the usury laws of this State; and that, to this extent, defendant was not liable.    Johnson filed a plea setting up reasons why the judgment against him should be quando acciderint.    The plaintiff demurred to Bishop's answer, on the ground that it was not pleaded with that certainty and definite- ness which is required in a plea of usury, and because the aver- ments of the plea did not show that there was any usury in the transaction.    It also demurred on the ground that the affidavit to the plea simply deposed to the truth of the "facts" set out in the plea, without pointing out which of the averments or statements therein were "facts."    The demurrer was sustained, Bishop's plea stricken, and judgment entered up against the defendants.    Bishop excepted to the striking of his plea.

1.  By rule 24 of the superior courts of this State it is prescribed that, in the affidavit to pleas of the character of that here in ques- tion, the defendant shall swear or affirm that the "defense" therein contained is true, to the best of  his  knowledge  and  belief.    Civil Code, § 5655.    The affidavit in the present case complied substan- tially with this rule, and the point made is hypercritical.    While there may be a difference between verifying the facts in a plea and

verifying the averments or allegations of fact therein, the difference is not substantial, and is no ground for holding that the plea in the present case was not sufficiently verified.

2. While the judgment sustaining the demurrer does not show upon which ground it was based, we conclude from the argument in the briefs of counsel that the main ground relied on in support of the demurrer was that the plea did not show that there was any usury in the transaction. Counsel for the plaintiff in error contended that the facts alleged in the plea were sufficient to constitute usury, and counsel for the defendant maintained a contrary position. We have no hesitation in deciding that, under the allegations of the plea, the transaction was clearly usurious. Our Civil Code, § 2886, declares that "It shall not be lawful for any person, company, or corporation to reserve, charge, or take for any loan or advance of money . . any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever." Under the allegations made, the transaction between Bishop and the bank was merely a contrivance or device to charge more than the legal rate of interest on the loan. By it the bank sought to collect two insolvent notes which it held against Sprayberry, and to make Bishop pay them off, in addition to paying the full legal rate of interest, as consideration for the loan of the money to him. Under the allegations of the plea, Bishop was in no way connected with the Sprayberry notes, and was under no legal or moral obligation to pay them. Upon reading the authorities upon this subject, we find that it is a scheme very commonly used by money-lenders, to extort usury from borrowers by requiring them to pay off insolvent notes or purchase worthless property or purchase property at an exorbitant price as a part of the contract for the loan. It is true the note sued on does not on its face show that it was usurious, but the law looks to substance and not form in probing for usury. Otherwise statutes against usury would become practically inoperative. While the note calls for but 8 per cent. interest, the allegations of the plea show that the bank required Bishop to pay, in addition to this the maximum legal rate of interest, about $117. The books are full of cases showing various schemes and devices of this sort to evade the usury laws of the country. In 27 Am. & Eng. Enc. Law, 1023, it is said: "Where, on an applica-

tion for a loan of money, the lender requires, as a condition of making the loan, that the borrower shall buy something of him at an exorbitant price, and particularly where the borrower does not need or want the property offered, the transaction becomes thereby marked as a cover for usury." In Shober v. Hauser, 4 Dev. & B. (N. C.) 91, Judge Gaston said, in discussing this subject, that "A requisition by the lender of the borrower, as a condition of the loan, to take up the notes of an insolvent man or one in doubtful circumstances would per se be usury in law." In Douglass v. McChesney, 2 Rand. (Va.) 109, the court held "that a tacit understanding between the parties, founded on a known practice of the [lender], to lend money at legal interest if the borrower purchased of him a horse at an unreasonable price, would be a shift to evade the statute against usury." In Low v. Prichard, 36 Vt. 183, it was held that a sale of property to a borrower in connection with a loan, at a price much greater than its value, of which both parties were aware although nothing was said as to its real value, was a usurious transaction. In Hathaway v. Hagan, 59 Vt. 75, one of the items of the consideration for the note sued on, which was an extension of other notes, was about $70 as the price of a sleigh shown to have been worth about $5. In delivering the opinion of the court, Rowell, J., said: "The defendant did not want the sleigh and had no use for it; but the orator took advantage of his situation and compelled him to buy it at fifteen times its value, in order to get extension on his notes, which were then in the hands of an attorney for collection. These circumstances make that transaction usurious . . , notwithstanding the subterfuge of a sale resorted to to cover it; for the law is quick to discern the intents of men, and piercing even to the dividing of the joints and marrow of sham and pretence." In Earnest v. Hoskins, 100 Pa. St. 551, it was held: "Where a lender of money exacts as a condition of the loan that the borrower shall purchase of him a piece of land at an exorbitant price, the transaction is usurious." In Campion v. Kille, 14 N. J. Eq. 232, the general rule was stated as follows: "In the construction of the statute against usury the courts have held with undeviating uniformity that where the real transaction was a loan of money, no shift could evade the statute. No matter under what guise the loan was concealed, whether by sale of goods, transfer of stock, taking bond for larger amount than loaned, passing off depreciated paper,

or by any other expedient, the court will strip off the guise and ascertain the true nature of the transaction." See also Webb on Usury, §§ 66–69; United States Bank v. Owens, 2 Pet. 526, and annotations in 2 Notes on U. S. Rep. 868; New Orleans etc. Co. v. Hagan, 1 La. Ann. 62, 68; Morgan v. Schermerhorn, 1 Paige, 544.

3. Accordingly, it was error to strike the plea on the ground that it was bad in substance and failed to set up usury. We are also of opinion that the court erred if the plea was stricken for uncertainty and indefiniteness. The plea admits the amount for which the note was executed, sets out the amount actually borrowed, admits the date of the note and its maturity, and distinctly sets forth the amount of usury which the defendant claims to have paid to the bank. We think this comes fully up to the requirements of the Civil Code, § 5090.

*Judgment reversed. All the Justices concurring, except Little J., absent.*