9799.　LOTT *v.* PETERSON, executrix.

1. Where a lender requires, as a condition precedent to the making of a loan upon which the maximum legal rate of interest has been charged, that the borrower discharge and pay off certain obligations due by the borrower to the lender together with usurious interest thereon, the transaction is usurious. If one who owes to another a debt infected with usury obtains from him a loan of money at a lawful rate of interest, and out of the proceeds thereof actually and bona fide pays off the old debt with usurious interest, whether at the time of obtaining the new loan or afterwards, the new loan is not thereby usurious. If, however, the new transaction as a whole be merely colorable and used and designed as a cloak to cover up usury, the new loan is usurious.
2. The surety on a promissory note secretly infected with usury, of which he had no knowledge, is discharged from liability if the note contains a waiver of homestead. In a suit against the surety the burden is on the plaintiff, after proof of the usury, to show that the surety signed the note with knowledge of the usury.
3. There was enough in the evidence in the present case to authorize the jury to infer that the notes sued on were infected with usury, and it was therefore error for the trial judge to direct a verdict in favor of the plaintiff.

DECIDED FEBRUARY 18, 1919.

Complaint; from Coffee superior court—Judge Summerall. March 16, 1918.

*W. C. Lankford,* for plaintiff in error.

*Dickerson, Kelley & Roberts, F. Willis Dart,* contra.

STEPHENS, J.　Mrs. Vicey Peterson, as executrix of the estate of B. Peterson, deceased, brought suit upon two promissory notes against J. S. Lott, as indorser.　The defendant by way of defense set up the plea that the notes sued on were secretly infected with usury, and that thereby the waivers of homestead contained therein were void, thus increasing the liability of the surety and releasing him from his obligation.　In support of this plea the maker of the notes, W. C. Lankford, testified, so far as is material to our purpose here, as follows: "The consideration of this note was made up as follows: $500 cash actually advanced by Mr. Peterson to me; $1,000 was added in to settle a previous item claimed by Mr. Peterson against me.　There was $500 of this thousand-dollar item that was charged out that I had agreed to pay Mr. Peterson as bonus for a previous loan of $2,500, which I had obtained from him.　The other half of this thousand-dollar item charged out was for money actually previously advanced.　The balance of this small note was money I was due him as interest at 12% per annum on the $2,500 I had borrowed from him or on another loan, I don't remember which one now. . . As to the second note for $4,218.24, my best recollection is that the amount I actually got out of that was $2,300; it might have run to $2,500; the balance of that note was for money I was due him, which he claimed against me as interest on $10,000 and other money I had borrowed from him.　At least three-fifths of the balance charged out was for interest he had charged against me at the rate of $12 per $1,000 per month, on money I had previously borrowed from him, and the balance of the amount, or at least two-fifths of the amount charged out, was for interest charged against me at the rate of 12%.　I don't remember whether he gave me checks for the full amount of these notes and I gave him checks back or not. . . I know I was only to get and only got $500 cash out of the little note, and not over $2,500 out of the big note. . . I gave Mr. Peterson back checks for the money. . . I think Mr. Peterson gave me a check for the whole amount of the smaller note, and of the small note I gave back the amounts I have heretofore mentioned. . . These checks were given to Mr. Peterson right at the time. . . I don't know whether Mr. Peterson gave me a check or not for the full amount of the notes. . .

I don't remember whether Mr. Peterson gave me checks for the whole amount and I gave my checks back to him, or whether he gave me checks for the difference. . . I do know that there were checks passed back on the larger note. I got the full amount, but in that same transaction it was agreed that that note should cover all the other items. I simply paid part of those other debts to Mr. Peterson at the same time. The balance was paid to me in cash. I got $2,300 in actual cash on the big note and the balance went on what I owed on interest. I didn't get that amount on the big note or small note so that I could take it and carry it away and do what I pleased with it. I got that amount turned over to me with the distinct understanding that I give those checks back to Mr. Peterson. . . It was agreed between us that I was to pay it back to him; it was a part and parcel of the same transaction. He gave me the check and I gave him the check back. I owed him other amounts; he calculated the interest at 12% on the other amounts. Mr. Lott had nothing to do with what I did with this amount; he didn't know I was paying this excessive interest. That was 12% on the other indebtedness I paid Mr. Peterson." It was in evidence that the defendant Lott at the time of the signing of said notes was ignorant of the fact that Lankford, the maker, was paying usurious interest. The defendant Lott knew nothing of the usurious transactions. The notes sued on, each containing a waiver of homestead and drawing interest at 8%, were introduced in evidence. The trial judge directed a verdict for the plaintiff against the defendant for the full amount sued for. This judgment was excepted to and brought here for review.

1. The sole question to be determined is, was there enough in the evidence from which the jury could infer that the making of either one of the notes was a part of a usurious contract, or whether the circumstances surrounding the transaction would authorize the inference that it was a scheme or cloak to cover up usury. The Supreme Court of this State held in the case of *Bishop* v. *Exchange Bank,* 114 *Ga.* 962 (2) (41 S. E. 43), that "where a lender requires, as a condition precedent to making a loan upon which the full legal rate of interest is expressly charged, that the borrower shall assume and pay off a promissory note held by the lender against one who is known by the lender to be insolvent, and whose debt the borrower is under no obligation to pay, the transaction is usurious."

Our first headnote is paraphrased from that case and the case of *Bates* v. *Harris*, 112 *Ga.* 32 (37 S. E. 105). In the former case the condition precedent to the making of the loan and a part of the consideration therefor was that the borrower should pay off the debt of another, while in the case here under consideration ,there is evidence to the effect that a condition precedent to, and a consideration for, the making of the loan was that the borrower should pay off his own usurious debts to the lender. This distinction makes no difference in the principle of law applicable. .The principle is the same. The decision in the *Bishop* case was based upon the principle that the borrower in making the loan contracted to pay more than the maximum rate of interest which the lender was allowed by law to charge, and thus assumed a burden and obligation to pay, in addition to the highest lawful rate of interest, an amount in excess of that which he was legally under obligation to pay. If the borrower contracted and promised, or the lender reserved, charged, or took more than the lender was legally permitted to exact for the use of his money, the transaction was usurious. It is immaterial whether the borrower, in order to obtain the loan, agreed to pay to the lender a debt due the latter by a third person, or whether the borrower agreed to pay his own usurious debts to the lender with usurious interest thereon. In either case the borrower would obligate himself to pay that which he was under no obligation to pay, and thus would increase his obligation to the lender, which, if it amounted to more than the highest rate of interest which the lender was allowed by law to charge for the use of the money, would constitute usury. In the case of *Siesel* v. *Harris*, 48 *Ga.* 652, it was held, that where money was loaned at a usurious rate of interest and a mortgage given by the borrower to secure the payment of the principal and usurious interest, and where such mortgage was given up and foreclosure abandoned upon partial payment of the debt with usury by the borrower and the giving of new notes for the balance, the new notes were infected with usury.

The witness Lankford, the maker of the notes, testified: "It was agreed between us that I was to pay it back to him; it was a part and parcel of the same transaction." In *Archer* v. *McCray*, 59 *Ga.* 546 (2), it was held that "where the original transaction was usurious, the usury infects all the securities given in renewal for

the same debt, however varied in form and amount, and the law applies all payments made on the debt to the principal and legal interest." This case was cited with approval in *Lockwood* v. *Muhlberg*, 124 *Ga.* 660 (2) (53 S. E. 92), where it was held that "a renewal thereof does not divest a usurious contract of the taint, although the illegal interest thereon to the date of renewal be then fully paid." See also *Hammond* v. *Buys*, 1 *Ga.* 416. Webb, in his work on Usury, § 308, says: "If a transaction is usurious in its inception, it remains usurious until purged by a new contract; and all future transactions connected with or growing out of the original are usurious and without valid consideration. An original taint of usury attaches to the whole family of consecutive obligations and securities growing out of the original vicious transaction; and none of the descendant obligations, however remote, can be free of the taint if the descent can be fairly traced." Judge Bleckley, in his opinion in the case of *McGee* v. *Long*, 83 *Ga.* 156 (9 S. E. 1107), says: "If there was usury in the original loan which was not purged out when these notes were given, and if that usury is in them, they are contaminated just as the original contract was."

The original indebtedness which was paid off with usury when the notes sued on were executed was clearly usurious. Was this original taint of usury purged upon the execution of the new notes or were the new notes given as a part of a transaction that was colorable and designed as a cloak to cover up the usury in the original transaction? These are questions of fact to be determined from all of the circumstances surrounding the execution of the new notes. The new transaction, being confused with the original usurious indebtedness and making provisions for its extinguishment, is at least subject to the inference that it is colorable and tainted with usury. We fully recognize the doctrine that a borrower may obtain money at a legal rate of interest and use it to pay off usurious debts to the lender without thereby rendering the new loan usurious. If, however, the new loan was made with the distinct understanding and condition that the borrower would use the money to pay off the old loan with usury, even though the borrower received the full amount of the principal of the new loan and afterwards repaid the old loan with usury to the lender, the new transaction would be tainted with usury. *Bates* v. *Harris*, supra.

Whether or not, as a condition precedent to the making of the

loans sued upon, the borrower agreed to pay up the original indebtedness with usurious interest, or whether the new transaction was bona fide or free from any usurious taint or a mere cloak to cover up usury, were questions of fact for a jury to determine. The law goes to the substance of the matter and seeks for the real truth. "No disguise of language can avail for covering up usury, or glossing over an usurious contract. The theory that a contract will be usurious or not according to the kind of paper-bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous. The law intends that a search for usury shall penetrate to the substance." Judge Bleckley, in *Pope* v. *Marshall,* 78 *Ga.* 635, 640 (4 S. E. 118). "The usury stalks like a pestilence through every form of contract, and poisons all it touches." Judge Bleckley in *Tribble* v. *Anderson,* 63 *Ga.* 56.

2. It is well settled that where a promissory note is infected with usury of which the surety had no knowledge, he is released from liability if the note contains a waiver of homestead. The waiver is void by reason of the usury; and for that reason, if the surety be ignorant of the usury, his risk is increased. The notes sued on were the so-called waiver notes, drawing interest at the maximum legal rate of eight per cent. per annum. The evidence is undisputed that the surety, plaintiff in error Lott, was ignorant of the usurious taint, if any, of the transaction surrounding the execution of the notes which he endorsed. Besides, the burden would be on the plaintiff, upon proof of usury, to show affirmatively that the surety had knowledge of the usury when he signed the notes. *Bank of Omega* v. *Ford,* 20 *Ga. App.* 496 (93 S. E. 106).

3. Whether or not the notes sued on were infected with usury was, under all the circumstances in this case, a question of fact to be submitted to the jury, and the court erred in directing a verdict for the plaintiff.

*Judgment reversed. Broyles, P. J., and Bloodworth, J., concur.*