WINECOFF *v.* ATLANTA TITLE & TRUST CO. *et al*

No. 11750.   JUNE 17, 1937.

*Roy S. Drennan,* for plaintiff.

*Roland Neeson, Haas, Gambrell & Gardner, Dodd & Dodd,* and *Tye, Thomson & Tye,* for defendants.

BECK, Presiding Justice. ■ On November 1, 1929, Winecoff sold certain land to Glynn Investment Company and took back a security deed for the purchase-money. This deed contained a power of sale in Winecoff, or his assigns, if the five purchase-money notes for $30,415.20 each should not be promptly paid. On May 26, 1930, Winecoff issued $45,000 worth of bonds payable to bearer, and due May 26, 1933. To secure these bonds he pledged with the Atlanta Title & Trust Company, as trustee, the five purchase-money notes given to him by Glynn Investment Company. In article IV of a trust deed which Winecoff executed to the Atlanta Title & Trust Company as trustee, he provided for the sale of the collateral, to wit, the Glynn Investment Company notes, if Winecoff should default in the payment of the $45,000 of bonds. In section 9 of article VII of this trust deed, he limits the power of the Atlanta Title & Trust Company, as assignee, to execute the power of sale contained in the purchase-money security deed of the Glynn Investment Company, and provides that such power of sale shall not be exercised by the Atlanta Title & Trust Company unless W. F. Winecoff shall request it, or unless he "shall be in default in the payment of principal or interest on the bonds secured by this indenture." He further provides that if the debt shall be in default, "the trustee shall have the right to foreclose said deed to secure debt against the Glynn Investment Company, or to sell said property under power, in the discretion of the holders of 33-1/3% of the outstanding bonds thereby secured." The petition in this case further shows that at the time Atlanta Title & Trust Company exercised this power of sale by selling the property of Glynn Investment Company, the holders of one third of the bonds had requested it, and proper notice thereof had been given to Winecoff. At the time this power of sale was exercised, Winecoff was in default; and all of the Glynn Investment Company notes were in default, except the last one.

Considering the facts just stated and those appearing in the statement of facts preceding this opinion, it is apparent that the

action of the Atlanta Title & Trust Company in selling the property was taken under section 9 of article VII of the trust deed, and that the foreclosure was not under article IV thereof. While it appears from the allegations of the petition that there was usury in the $45,000 loan, it also appears that if the usury was deducted, Winecoff would still be indebted at the time of the exercise of the power of sale in an amount over $31,000, after purging the usury. And even if there was usury in the $45,000 loan, that would not have prevented the Atlanta Title & Trust Company from foreclosing against the Glynn Investment Company. It would only bring up a question when the proceeds of the Glynn Investment Company foreclosure were ready for distribution to the holders of the $45,000 bonds. A promise not to plead usury is no consideration, because it is null and void and unenforceable. Usury could not be waived under this executory contract, and a promise to waive it is of no force and effect. It could not have been enforced against Winecoff, and consequently can not be enforced against the defendants. The contract relied on is simply an extension of renewal of the original contract—an agreement to extend the loan for three years upon Winecoff's promise not to plead usury. If the original contract was usurious, the new contract likewise is usurious. It is a promise to pay usury in either event. The usury has never been purged, but is included in the new promise. A contract once usurious is always usurious until completely executed on both sides. If Winecoff had given the defendants a deed to the property upon their agreement to permit him to redeem by the payment of the full amount of the loan, including usury, the contract would be void and unenforceable. The transaction does not amount to a novation with the usury purged; there has never been a cancellation of the old contract, and no substitution of a new one for the old one. The agreement was in effect a device or subterfuge to cover up the usury. A promise not to plead usury, when made at the maturity of the note or during foreclosure, is no more enforceable than if it had been contained in the body of the note itself. In either event the promise is nugatory and affords no consideration for a contract. Such, in substance, are the contentions made in the brief of counsel for the defendants in error; and we agree with them because they are sustained by numerous authorities, and we find no decisions laying down a different principle.

In *Siesel* v. *Harris,* 48 *Ga.* 652 (2), money was loaned at a usurious rate to the firm composed of A, B, and C, and a mortgage was given by the firm to secure the debt. The mortgage was foreclosed, and the fi. fa. was to be levied, when, the mortgagor insisting upon indulgence being given and threatening to raise the question of usury against the debt and the fi. fa., it was agreed that the mortgage should be canceled, a part of the debt paid in cash and the balance in three installments, A and B giving three notes for the installments. One of the notes was paid, and a suit was brought on the others against A and B, C having left the jurisdiction. It was held that there was no legal novation, and that the original contract was not purged of its usury and the new notes were likewise usurious. The court said: "It is true the mortgage was given up; but if that were sufficient to purge a contract of usury, it would open the door so that the whole law of usury could have been set aside, if the lender ever demanded and took a mortgage as a security and afterwards, upon agreement, canceled it. . . The Code says, 'The effect of usury is to annul and make void the contract for the usury; the lender having the right to recover the principal sum loaned, with interest.' If by the statute that portion of the contract in excess of the lawful rate of interest is annuled and made void, the parties to that contract can not make it valid and binding. The substitution by the parties of a new note or bond for one affected by usury will not avail. . . Comyn on Usury lays down the general rule that when the original parties to the usury are parties to the new contract or security, and it be given in substitution of the old one, such new contract of security will be void."

In 66 C. J. 280, the following appears in the note: "On the other hand, since the usury statutes are based on public policy, it has been held that a usurious contract is wholly incapable of confirmation while it is executory, and that the debtor can not, by any agreement entered into either when the usurious agreement is made or afterward, waive the right to set up usury in defense, or validate the contract by ratification." And in the same note (p. 278) we find the following: "On the other hand, it has been held that a party can not estop himself from asserting usury as a defense by an agreement not to plead usury, since this would in effect be a nullification of the usury laws. Written authority by

a debtor to enter judgment against him on a usurious contract does not, before entry of the judgment, estop him to plead usury; nor can he estop himself by his mere promise to pay the usurious rate agreed upon." In Clark v. Spencer, 14 Kan. 398, 404 (19 Am. R. 96), it was held that an agreement to withdraw plea of usury "is no better than an agreement not to plead it; and surely, if such an agreement could be sustained, a usurious loan would always be accompanied by an agreement not to plead usury, —a very simple, if not effectual, way of evading the law." See also 99 A. L. R. 602, where the principle just stated is elaborated.

In *Brown* v. *Baer,* 79 *Ga.* 347 (5 S. E. 72), this court said: "In consideration of a promise by B to A to pay the latter seven per cent. interest and also a debt due him by others, B's promise thus amounting to an agreement to pay usury, A agreed to lend B money with which to purchase certain goods about to be sold at public outcry for cash by a receiver, if sold below a certain price. On the faith of this promise by A, B bid off the goods at less than the price mentioned. A refused to lend the money. B consequently could not comply with his bid, and the goods were immediately resold by the receiver to another for less than B's bid, and he holds B responsible for the difference and has sued B for the same, the goods being actually worth more than B's bid. *Held,* that A's breach of the contract herein stated gives B no right of action for damages against A." In the opinion the court said: "The contract between Baer and Brown is bad for want of mutuality. If it had been fully executed, and Brown had actually repaid to Baer the principal with interest at 7 per cent., and also the $500, there can be no doubt that Brown could recover back from Baer every dollar paid him for the use of the money above what would be lawful interest; and as the contract was not exe- cuted, Baer would not be allowed to enforce it specifically against Brown, if he objected, for the reason that when the specific per- formance of a contract is decreed, it must necessarily be per- formed in all parts, and this could not be done in case of such a contract as this at Baer's instance against Brown's consent, be- cause the latter would thus be compelled unlawfully to pay usurious interest. As the law would not aid Baer in availing himself of the benefit of all the stipulations made in his favor, it would seem that it should not aid Brown in attempting to enforce the

contract against Baer. If, then, an executory contract is not mutually and legally binding in all its parts between the parties, so that either would be allowed to fully and completely enforce it against the other, it follows that, for a breach thereof while the whole contract is yet executory, neither can sustain an action for damage."

In *Patterson* v. *Clark*, 28 *Ga.* 526, the court stated: "A mortgage creditor receives from his debtor different sums from time to time to forbear foreclosing his mortgage. *Held*, that such contracts are forbidden by the spirit and policy of our laws against usury." See the discussion of the question in the body of the opinion in that case. In *Johnson* v. *Griffin Banking & Trust Co.*, 55 *Ga.* 691, the court held that a security deed void for usury does not acquire validity by purging the debt of usury on reducing the debt to judgment. In *Bolton* v. *Union Banking Co.*, 41 *Ga. App.* 206 (3) (152 S. E. 587), the Court of Appeals held that in order to purge a contract of usury the contract must be wholly abandoned or canceled, and a new obligation taken, containing no part of the usury. In *Shealy* v. *Toole*, 56 *Ga.* 210, it was held, that, upon the maturity of a note, an agreement to pay additional interest at usurious rate is null and void, amounts to a nude pact, and is no consideration for an agreement of extension. In International Building &c. Asso. *v.* Biering (1894), 86 Tex. 476 (25 S. W. 622)—reversing Tex. Civ. App.,—involving a usurious loan transaction, a written supplemental agreement that the debtor would forego and relinquish all claims based on usury arising from past payments of interest, in consideration of reduction of future usurious interest in the said transaction, was declared invalid and unsupported by a lawful consideration, following the ruling in El Paso Building &c. Asso. *v.* Lane (1891), 81 Tex. 369 (17 S. W. 77).

■ The contract is further null and void because it amounted to an agreement not to bid at a public sale contrary to the interest of a third party, Glynn Investment Company. The allegations of the petition show that Glynn Investment Company purchased the property in question from Winecoff, giving its notes secured by a purchase-money security deed. These notes as well as the security deed were transferred and assigned by the petitioner to Atlanta Title & Trust Company as trustee, to secure the bond issue of $45,000. The foreclosure proceedings were in effect

against Glynn Investment Company, and resulted from the default of that company in the payment of its notes, and the default of Winecoff in the payment of his bonds and interest. The alleged agreement made by Winecoff with the bondholders to permit named persons to buy in the property at the foreclosure sale amounted to an unlawful conspiracy against Glynn Investment Company to suppress bidding at a public sale, and therefore was invalid. In *Dixon* v. *Ernest L. Rhodes & Co.*, 44 *Ga. App.* 678 (4) (102 S. E. 716), the Court of Appeals held: "Whether or not the defendant's agreement not to appear and bid at the sale might otherwise have constituted a valuable consideration, . . it could not amount to such consideration where its object and purpose was to hinder, delay, or defraud another creditor. Since the agreement not to bid at the sale was thus illegal and void as a consideration, and since the plaintiff, in foreclosing its security deed and selling the property, was doing only that which it had the right to do independently of the new agreement, it follows that the alleged agreement of the plaintiff to release the remainder of the debt was altogether lacking in consideration, and also that there was no such performance as would remove the case from the operation of the statute of frauds." See also *Graham* v. *Theis*, 47 *Ga.* 479, where the court held that a contract not to bid at a judicial sale is illegal and the refraining from bidding in part performance of a parol contract for the sale of the land is not such a part performance as brings the contract within the exception provided in the statute of frauds. Having entered into such a contract, the plaintiff does not come with clean hands into a court of equity.

Under the rulings that we have stated above, the plaintiff was not entitled to the relief sought. The court did not err in sustaining a general demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur.*