SIMPSON *et al. v.* CHARTERS, executrix, *et al.*

No. 12867.   September 13, 1939.   Rehearing denied October 13, 1939.

848

*William B. Jones* and *George L. & Carter Goode,* for Simpson et al.

*Wheeler & Kenyon, C. J. Thurmond, John H. Davis & Son,* and *C. M. McClure,* contra.

DUCKWORTH, Justice. (After stating the foregoing facts.)
■ The evidence was insufficient to support a verdict for the plaintiffs on the theory that the notes sued on were purchase-money notes given for the purchase-price of the property involved in this suit. On the other hand, it appears from the evidence that T. A. Capps obtained title to this property as security for a loan which he made to the defendants. Miss Caroline Davenport, acting for the defendants, bid $22,000 for the property of the Toccoa Falls Light & Power Company at a receiver's sale. The defendants needed $11,500 with which to comply with the bid, and approached Capps for the purpose of borrowing this sum. Capps agreed to lend the $11,500 and take title to the property as security if the defendants would include in the notes two tax fi. fas. which he held against the Capps Cotton Manufacturing Company, and a judgment which he held against E. P. Simpson. The loan was made, and the tax fi. fas. and the judgment were included in the principal of the notes given as a result of this transaction. The chief question presented in this case is whether the notes are usurious by reason of the inclusion of these items. We shall first discuss this question with reference to the tax fi. fas. against the Capps Cotton Manufacturing Company. "Usury is the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest." Code, § 57-102. However, where an excess over the legal interest is paid, or contracted to be paid, for other goods and valuable considerations beyond the mere use of money, it is not usury. *Atlanta Mining & Rolling Mill Co.* v. *Gwyer,* 48 *Ga.* 9; *Sledd* v. *Pilot Life Insurance Co.,* 52 *Ga. App.* 326 (183 S. E. 199). The plaintiffs introduced various documents for the purpose of showing a legal or moral obligation on the part of the defendants to pay the tax fi. fas., and thereby to show a consideration for their assumption; but we think the evidence demanded a finding that the defendants' assumption of the tax fi. fas. was without consideration. The Capps Cotton Manufacturing Company was in possession of the property against which the taxes were levied, under a bond for title from T. A. Capps, which contained a provision that all taxes should be paid by the obligees in the bond
■

for title. The taxes accrued in 1929, and the fi. fas. were transferred to T. A. Capps in January, 1930. The company being in default on its indebtedness of $33,000 to Capps, he had the property sold in March, 1930, to satisfy this indebtedness, and bought in the property for $10,700. Even assuming, as contended by the defendants in error, that the tax fi. fas. did not become extinguished when Capps purchased the property at this sale, there is no evidence that the plaintiffs in error have ever been under any obligation, legal or moral, to pay them. The fact that E. P. Simpson was president of the company and had charge of its assets did not render him personally responsible for its debts. Neither does the fact that Mrs. Sarah R. Simpson, the wife of E. P. Simpson and mother of the other defendants, owned ninety per cent. of the stock of the company have any weight, because a stockholder is in no wise responsible individually for the obligations of the company. See *Durham* v. *Greenwold,* 188 *Ga.* 165 (3 S. E. 2d, 585).

It is contended that the Toccoa Falls Light & Power Company, as the transferee of the bond for title from Capps to the Capps Cotton Manufacturing Company, was liable for the taxes and the tax fi. fas. were therefore once a liability against the property involved in this suit. There is no merit in this contention. It is apparent from the transfer that it was made for the purpose of securing a debt. In the absence of delivery of possession under such a transfer, there is no obligation on the part of the transferee to pay taxes on the property. *Decatur County Building & Loan Association* v. *Thigpen,* 173 *Ga.* 363 (3) (160 S. E. 287). It is further contended that the lender is not shown to have had any intent to violate the usury law. It is shown that the lender required that the borrowers, in addition to paying the highest legal rate of interest on the sum borrowed, should assume a worthless obligation to the lender, which neither of the borrowers had ever been under any legal or moral obligation to pay; and this is sufficient to show an intention to charge usury. Where, as in the instant case, it appears that the lender intended to take for the use of money more than the lawful rate of interest, a verdict of usury is demanded. The notes sued upon were therefore usurious, and all interest thereunder was forfeited. *Reconstruction Finance Corporation* v. *Puckett,* 181 *Ga.* 288 (181 S. E. 861, 101 A. L. R. 735). The amount of these fi. fas. should also be deducted from the principal of the notes.

■ The principal of the notes also included an execution in favor of T. A. Capps against E. P. Simpson, which execution was either canceled of record or delivered to the borrowers at the time the loan was made. While, as ruled in the preceding division, the notes were usurious by reason of the tax fi. fas., it does not follow that the amount of the principal represented by this execution should be deducted from the notes. This execution was an indebtedness against E. P. Simpson, and constituted sufficient consideration for his assumption of the debt, and would not as to him be cause for declaring the notes to be usurious. *Cameron* v. *Meador-Pasley Co., 39 Ga. App.* 712 (148 S. E. 309). While nulla bona had been entered on the execution, and there was testimony that E. P. Simpson was insolvent when the loan was made, the jury were authorized to find that this execution was not included in the notes as a part of a scheme to obtain the property of the other borrowers as security for a worthless execution. This case is distinguished from *Bishop* v. *Exchange Bank,* 114 *Ga.* 962 (41 S. E. 43), where the borrower was required to assume and pay off the obligation of an insolvent *third* party. It appears from the testimony introduced by the defendants that Simpson was the person chiefly interested in obtaining the loan, and that he negotiated the loan for the purpose of saving for his family the property of the light and power company, which company he had founded and had owned and managed for many years. The respective interest of the borrowers does not appear from the evidence, and it may be that Simpson had as much interest in the property given as security as did his children who signed the notes with him. It does appear from the evidence that he became president and active manager of the firm of E. P. Simpson & Company, a partnership composed of E. P. Simpson and the other borrowers, which has operated the property involved in this suit ever since the loan was made. While Simpson was not named as an obligee in the bond for title from Capps made in pursuance of this transaction, this would seem to have been consistent with his desire to save the light company for his children. It follows that the verdict was authorized in so far as it related to the execution against Simpson, and that this portion of the principal of the notes should not be stricken as usury.

■ Since the judgment must be reversed on the general grounds,

and from a careful study of the record and the special grounds it does not seem likely, in view of the rulings in the present decision, that the same questions will arise upon another trial, we do not deem it necessary to deal with the numerous special grounds of the motion for new trial.

*Judgment reversed. All the Justices concur.*