41611. HARRISON, Administrator v. ARRENDALE.

ARGUED NOVEMBER 4, 1965—DECIDED FEBRUARY 16, 1966.

*Robert E. Andrews,* for appellant.

*Ellard & Frankum, Stephen D. Frankum,* for appellee.

BELL, Presiding Judge. ■ The equity features originally a part of this case are not before us for consideration. Therefore, this court has jurisdiction.

In connection with plaintiffs' motion for judgment n.o.v., the only question is whether the evidence demanded a verdict based upon a finding that the debt was usurious.

Evidence adduced at the trial showed that plaintiffs as makers gave their note made to Mrs. Della B. Arrendale as payee in the sum of $16,229.36 due June 24, 1960. On March 31, 1960, plaintiffs renewed this indebtedness and borrowed an additional $7,000. As evidence of the aggregate indebtedness, they gave another note made to Mrs. Della B. Arrendale as payee, in the sum of $27,000 due June 24, 1961, with eight percent interest from maturity.

According to the testimony of one of the plaintiffs, the principal accounted for in this transaction was $16,229.36 plus the additional $7,000, or a total of $23,229.36, making a difference of $3,770.64 between the principal and the amount due at maturity. Clearly, if this difference was interest, it amounted to 16.23 percent interest for 1 year and 85 days, or 13.16 percent

per annum. This note was later transferred to defendant, who handled all the transactions with plaintiffs, either as Mrs. Arrendale's agent or on his own behalf.

Plaintiffs made another note to Mrs. Della B. Arrendale as payee in the sum of $3,660, dated June 14, 1961, with eight percent interest from date. A receipt signed by defendant showed that this amount included $2,160 interest on the $27,000 note plus "other indebtedness incurred during last twelve months in the amount of $1,500." At that time no interest was due on the $27,000 note, and none would have been due until June 24, 1962. Moreover, the evidence showed that plaintiffs themselves had not received from defendant or Mrs. Arrendale any part of the $1,500. This note, too, was transferred to defendant. Defendant testified to the effect that he later made an "adjustment" by excluding from subsequent notes the charge of excess interest represented in the $3,660 note. One of the plaintiffs contradicted this in her testimony, stating that the promised adjustment was never made.

Plaintiffs gave a fourth note made payable to Tom Arrendale or Mrs. Della B. Arrendale, in the sum of $34,300.80. This note, dated June 18, 1962, and due June 24, 1963, with eight percent interest from maturity, was given in renewal of plaintiff's prior indebtedness. Even if we include as the principal of the fourth note the amount of the $27,000 note (which according to one plaintiff's testimony included an excessive charge of interest as previously detailed) plus the amount of the $3,660 note (for which it appears plaintiffs were not legally indebted at the time the $3,660 note was given) and interest on the latter for 1 year and 4 days ($296.01), or a total of $30,956.01, the interest charged between the date of execution and the date of maturity of the note would amount to 9.75 percent for 1 year and 6 days, or 9.59 percent per annum.

Plaintiffs made the fifth and last note payable to Tom Arrendale, in renewal of their previous indebtedness, in the amount of $34,000 dated June 24, 1963.

"Usury is the reserving or taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest." *Code* § 57-102. The

maximum lawful interest being eight percent per annum under *Code* § 57-101, the foregoing evidence tended to prove that the transactions between plaintiffs and defendant were infected with usury. And if any part of the transactions was usurious, the final note of $34,000 was also usurious where not purged by a new contract, since "An original taint of usury attaches to the whole family of consecutive obligations and securities growing out of the original vicious transactions; and none of the descendant obligations, however remote, can be free of the taint if the descent can be fairly traced." *Lott v. Peterson,* 23 Ga. App. 458, 462 (98 SE 361) ; *Archer v. McCray,* 59 Ga. 546, 549 (2).

However, there was also evidence from which the jury was authorized to find that the transactions were not usurious.

Concerning the charge of interest represented in the $3,660 note and not then due, defendant testified that he had inadvertently miscomputed the interest and that when the error was called to his attention, a new note was prepared, giving plaintiffs credit for the extra interest charged. To rebut the implication of usurious intent arising from the taking or reserving of interest greater than the legal rate, it is always competent for the party to show that the excess was the result of an honest mistake. *Rushing v. Willingham,* 105 Ga. 166, 170 (31 SE 154) ; *Bank of Lumpkin v. Farmers State Bank,* 161 Ga. 801, 810 (132 SE 221).

Defendant further testified that throughout the transactions with plaintiffs, he made cash loans to plaintiffs' brother, Ralph Richards and that these were included in renewals of plaintiffs' notes. "A. They were made from time to time, not to Mrs. Pierce and not to Mrs. Pinkerton, but to Mr. Ralph Richards. . . . When this note became due we added those all up and put them in the new note and went on from there. Q. What you are testifying to, Mr. Arrendale, is that as each note became due the amount of the advances during the preceding year was figured and added to the new note? A. That is the way we handled it. Q. At the time the new notes were made, was there any interest computed? A. There was, yes sir. Q. What interest was computed? A. Eight percent of the balance due computed for twelve months and added into the note. Q. Did

you ever knowingly compute interest at any higher sum than eight percent? A. Not knowingly, no, sir. . . Q. When the note would come up for renewal, state whether or not there would be any agreement between you and the plaintiffs. A. We were in full agreement. Q. State whether or not the plaintiffs computed the balance due as well as you computing it? A. They did, yes, sir. Q. Was that done each time? A. Each time."

Defendant testified that the amount of additional principal included in the $27,000 note was in excess of $9,000, not just $7,000 which plaintiffs received. The difference in these two figures may well have consisted of loans to Ralph Richards. Also, the sum of $1,500, the part of the $3,660 note other than erroneous interest, was conceded by one plaintiff to have been lent to Ralph Richards and assumed by plaintiffs as their indebtedness.

While, defendant was unable to testify as to the precise time and amounts of these loans to Richards, this was explained by the method in which defendant and Richards kept account of these loans. Whenever defendant made loans to Richards, Richards would give defendant a "check" for the amount, which defendant would keep until the next note was signed by plaintiffs. Upon execution of a new note including assumption of Richards' indebtedness, defendant would return the checks, thus disposing of his record.

In *Bishop v. Exchange Bank,* 114 Ga. 962, 964 (2) (41 SE 43), it was held that where a lender requires, as a condition precedent to making a loan upon which the full legal rate of interest is expressly charged, that the borrower shall assume or pay off a debt due the lender from a third party whose debt the borrower is under no obligation to pay, the transaction is usurious. *Brown v. Baer,* 79 Ga. 347, 357 (5 SE 72) ; *Winder Nat. Bank v. Graham,* 38 Ga. App. 552, 553 (144 SE 357). See also: *Simpson v. Charters,* 188 Ga. 842, 849 (5 SE2d 27) ; *Lott v. Peterson,* 23 Ga. App. 458, 460 (1), supra; Ann. 47 ALR 57. Here however, there is no evidence to show that plaintiff's assumption of Richards' indebtedness was involuntary on their part. Thus this case does not fall exactly within the terms of the holding in *Bishop.*

It might be argued, and with cogent reason, that it should make no difference whether plaintiffs' assumption of Richards' debt was voluntary or involuntary so long as defendant received a collateral advantage which plaintiffs were under no obligation to give him. We think that in the absence of consideration moving to plaintiffs in return for their assumption of Richards' debts this argument would have merit. But here, the jury could have found that such consideration, other than the loans to plaintiffs themselves, actually existed. Whenever plaintiffs executed a new note, it was customary between the parties that defendant return the checks evidencing Richards' indebtedness. Presumably, it was thereby intended to release Richards, and if so, this constituted additional consideration to plaintiffs. Where an excess is paid, or contracted to be paid, for other good and valuable considerations beyond the mere use of money not interposed as a device to cover usury, the excess is not usury. *Atlanta Mining &c. Co. v. Gwyer,* 48 Ga. 9, 11 (2); *Simpson v. Charters,* 188 Ga. 842, 849, supra; *Sledd v. Pilot Life Ins. Co.,* 52 Ga. App. 326, 327 (183 SE 199).

To constitute usury, it is essential that there be, at the time the contract is executed, an intent on the part of the lender to take or charge for the use of money a higher rate of interest than that allowed by law. *Bellerby v. Goodwyn,* 112 Ga. 306, 308 (37 SE 376); *Loganville Banking Co. v. Forrester,* 143 Ga. 302, 305 (84 SE 961). This element of usury may be implied if all other essential elements are expressed upon the face of the contract. *Bank of Lumpkin v. Farmers State Bank,* 161 Ga. 801, 811, supra. It may be held to exist as a matter of law under the circumstances in *Bishop v. Exchange Bank,* 114 Ga. 962, supra. But here, while the evidence might have authorized a finding of usurious intent, that finding was not demanded as a matter of law.

The trial court did not err in denying plaintiffs' motion for judgment n.o.v.

■ The evidence shows that prior to instituting proceedings to exercise the power of sale contained in the deed to secure debt, defendant gave to one of plaintiffs, Mrs. Charles Pierce, the notice required by *Code Ann.* § 20-506 as a condition precedent to collection of attorney's fees as provided for in the note secured.

However, the evidence fails to disclose that the requisite notice was given to Mrs. E. L. Pinkerton. The jury's verdict for $33,000 expressly included an award of attorney's fees against both plaintiffs. "By the terms of *Code Ann.* § 20-506, attorney's fees for which provision is made in a promissory note are not collectible unless it be alleged and proved that after maturity the holder of the note notified the person sought to be bound thereon that he had ten days from the receipt of such notice to pay the principal and interest without attorney's fees." *Walton v. Johnson,* 213 Ga. 108, 111 (97 SE2d 310). As to Mrs. Pinkerton the verdict for attorney's fees was not authorized by the evidence. Since we are unable to determine from the record what portion of the verdict consisted of attorney's fees, this case must for this reason be reversed on the general grounds of the motion for new trial.

■ Ground 6 contends that a portion of the trial court's charge to the jury was misleading or confusing because it did not correctly state the form of verdict in the event the jury should find that plaintiffs had proved their case." A certificate of the trial judge contained in the record recites: "Let the record show that during a recess in the trial of the above stated case counsel for each party was called into chambers by the judge presiding in said case and their assistance was requested in preparing the forms of verdict to be submitted to the jury impaneled to try said case. After discussion between counsel for each party and the judge presiding in said case the forms of verdict as contained in the court's charge were prepared by the judge presiding in said case and submitted to counsel for each party for approval and at said time neither counsel offered any objections to the form of verdict prepared by the court." Plaintiff's failure to object under these circumstances amounted to acquiescence and a waiver of objection to the charge attacked as ground for new trial. See *Greenway v. Sloan,* 211 Ga. 775, 776 (2) (88 SE2d 366); *Goldstein v. Karr,* 110 Ga. App. 806, 808 (140 SE2d 40). While those two cases determined the effect of *express* waiver, waiver may also result from silence where a party is afforded an opportunity to object. *Edmiston v. Whitney Land Co.,* 198 Ga. 546, 550 (32 SE2d 259); *Dowdle v. West Lumber Co.,* 79 Ga. App. 663, 667 (54 SE2d 682).

■ Ground 7 of the enumeration of errors complains that the trial court erred in its charge authorizing the jury to determine whether defendant was entitled to attorney's fees "for the reason that said charge authorized a jury to find affirmative relief for the defendant . . . when the defendant had not, by his pleadings, sought affirmative relief." Plaintiffs' petition sought an adjudication of the amount of indebtedness due under the note. This necessarily embraced a determination as to plaintiffs' obligation, if any, to pay attorney's fees provided for in the note. The charge did not amount to an expression of opinion by the trial judge as further contended by plaintiffs. While the charge was not fully adjusted to the evidence, yet it was not error for the reasons assigned in this ground.

■ The errors enumerated in grounds 4 and 5 of the enumeration of errors, are not likely to recur upon a new trial.

*Judgment remanded with direction to the trial court to grant a new trial on the general grounds. Hall and Deen, JJ., concur.*