## CONNOR v. GREENVILLE NAT. EXCH. BANK. (No. 2731.)

(Court of Civil Appeals of Texas. Texarkana. May 15, 1923. Rehearing Denied May 24, 1923.)

**1. Contracts ⟞⟞189—Agreement to postpone collection of debt until certain date held not breached.**

Where a son was indebted to a bank on a $2,000 note due June 5th and $10,000 note due the following October 1st, and, the bank pressing payment of the $2,000 note, the father agreed, in consideration of an extension of said note, that "any indebtedness due said bank shall be entitled to be paid in full before anything is paid on any indebtedness to me," such agreement by the father was only to forbear enforcing his claims due and maturing at the time until both of the bank's notes became due and collectible in full, which time was October 1st, so that, the bank having failed to enforce payment by the son of his indebtedness to it when the last note was collectible on October 1st, the father could thereafter avail himself of the right to collect his claims.

**2. Contracts ⟞⟞73—Agreement to forbear is good consideration.**

An agreement to forbear the exercise of a right where the forbearance is granted because of a return promise is a sufficient consideration to support an agreement either of the debtor or of a third person, where the creditor has in pursuance of such agreement actually forborne.

Appeal from District Court, Hunt County; Geo. B. Hall, Judge.

Action by the Greenville National Exchange Bank against R. E. Connor and another. From judgment for plaintiff, the named defendant appeals. Reversed and rendered.

The appellee brought the suit against V. L. Connor and R. E. Connor, seeking a judgment in personam against each of them. V. L. Connor was sued for $10,000, interest and attorney's fees alleged to be due on a promissory note executed by him in the sum of $10,000, with 10 per cent. interest from maturity, payable to the order of the appellee on January 29, 1921, dated December 31, 1920, and providing for attorney's fees. R. E. Connor was sued

for $5,000 (the same to apply as a credit on the debt of V. L. Connor), upon the following written instrument:

"Greenville, Tex., June 7, 1920.

"Greenville National Exchange Bank, City— Dear Sirs: In consideration of the credit extended to my son V. L. Connor by your bank I agree that any indebtedness due said bank shall be entitled to be paid in full before anything is paid on any indebtedness to me.

"R. E. Connor."

In the petition it was alleged:

"That on or before the 7th day of June, 1920, said defendant (V. L. Connor) being indebted to the plaintiff at that time, and a part of said indebtedness being past due, in order to secure an extension of time and to procure additional credit and additional extensions of time, made a statement in writing relating to his assets and liabilities; that at the same time and for the same purpose the defendant R. E. Connor, being the father of his codefendant herein and claiming an indebtedness against said codefendant of $11,000, executed" the instrument above described.

The petition further alleged:

"That at the time said statement was made, and at the time said instrument of writing was executed and delivered to the plaintiff, the plaintiff was insisting upon the prompt payment and settlement of any and all indebtedness that said V. L. Connor might owe it, and a portion thereof, as above alleged, had already matured; that plaintiff was unwilling to extend the payment of said indebtedness, or continue to extend credit to said defendant V. L. Connor, until and unless his father, R. E. Connor, should enter into the agreement above set forth; and that the extent of said agreement was that, as between the plaintiff and the defendant R. E. Connor, the plaintiff was to have any indebtedness the said V. L. Connor might owe it satisfied out of any property belonging to the defendant V. L. Connor before the defendant R. E. Connor should have any indebtedness due him by said V. L. Connor paid out of said property."

The petition further alleged that after the execution of the note and the instrument V. L. Connor was adjudged a bankrupt in the federal court, and that R. E. Connor received as dividends on his claim against the estate of V. L. Connor about $5,000. The petition prayed for judgment against V. L. Connor for the unpaid balance of the note and for judgment against R. E. Connor for the amount received by him in dividends from the estate of V. L. Connor, bankrupt.

The defendant V. L. Connor entered a general denial of the petition and pleaded his final discharge in bankruptcy in bar of any right to recover a personal judgment against him.

The defendant R. E. Connor entered a general denial and specially pleaded as a defense that the instrument sued on was without

⟞⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

any consideration whatever; that there was no agreement for any additional credit to be extended to V. L. Connor; that it was not meant nor intended that in the event of bankruptcy R. E. Connor should not participate and receive such dividends as might be declared; that it was not contemplated or agreed that any extension of time of payment, as was done, should be granted to V. L. Connor upon any of said indebtedness that he might be owing the bank, or any other indebtedness not then owing and due.

The case was submitted to the jury upon special issues, and upon the answers of the jury a judgment was rendered in favor of the appellee against R. E. Connor for $4,924.13, the amount of the dividends he received from the bankrupt estate of V. L. Connor, with interest on same. The judgment further provided that the plaintiff take nothing against V. L. Connor.

It appears from the evidence that V. L. Connor, a single man and 29 years old, who began a lumber business at Greenville in the spring of 1919, is the son of R. E. Connor. On May 26, 1919, V. L. Connor opened up an account with the appellee bank, borrowing $1,000 at the time. On June 2, 1919, he borrowed an additional $1,000, with his father, R. E. Connor, as surety; and on June 11th he borrowed an additional $2,000, with his father as surety. Similar transactions with the bank continued until V. L. Connor owed the bank about $12,613.75. Of that sum of money owing, $2,013.75 was evidenced by a note due June 5, 1920, and $10,600 was evidenced by a note due October 1, 1920. The two notes were plain notes, without any surety and unsecured by any collateral. On June 4, 1920, the note for $2,013.75 maturing June 5th, the bank was demanding a substantial reduction by V. L. Connor of the indebtedness owing by him, and V. L. Connor was seeking extension of his note, insisting that while his business at the time was not good and he was not able to pay the note, the bank was nevertheless safe in the debts for the reason that he did not owe anybody but the bank and his father, R. E. Connor, and the bank would be paid before his father would get anything on his debts. The bank before it would agree to allow an extension of payment of the note maturing demanded of V. L. Connor a written financial statement and that he procure from R. E. Connor, his father, the instrument under consideration. The bank official prepared the instrument in suit and handed it to V. L. Connor and the new note was made and signed by him; but the transaction was not to be completed until the financial statement was made out and the signed instrument procured from R. E. Connor. The note was made out for $2,000 due 30 days after date. On June 7, 1920, V. L. Connor handed the bank the instrument signed by R. E. Connor, and at the same time brought the written financial statement, and the maturing note of $2,013.75 was renewed, less the $13.75 paid, and the time of payment was extended. The note for $10,600 was not due until October 1, 1920. At the time R. E. Connor signed the instrument in suit, he knew of the two notes owing by V. L. Connor to the bank, and of the date of maturity of the same. At the time R. E. Connor signed the instrument in suit, V. L. Connor owed him for borrowed money as follows: A note for $3,471.94, bearing 10 per cent. interest from date, and dated January 1, 1920, and on demand; a note for $5,000, bearing 10 per cent. interest dated June 24, 1919, due January 1, 1920; and account for money paid $2,698. The notes and account owing R. E. Connor were due and unpaid at the time the instrument in suit was signed, and the said notes and account were never extended after that date. The bank's note of $2,000, dated June 4, 1920, was renewed again on July 3, 1920, and again on August 2, and again on September 1, 1920, and was paid off in full in November, 1920. On September 30, 1920, $600 was paid by V. L. Connor to the bank on his $10,000 note; and the bank then by agreement with V. L. Connor renewed it for $10,000 and extended the time of its payment to January, 1, 1921, and renewed it again by agreement with V. L. Connor on December 31, 1920, and extended the time of payment to January 29, 1921. It does not appear that these renewals and extensions were with the knowledge and consent of R. E. Connor. The evidence is undisputed that the bank did not demand nor seek to enforce payment by V. L. Connor of the two notes at the maturity of the same. It does not appear that V. L. Connor did not have sufficient property and money to satisfy the $10,000 note when due on October 1, 1920, or when due on December 31, 1920. It does appear that V. L. Connor did have real estate and merchandise on hand, and further that "between June 4, 1920, and the time the account was closed (January 13, 1921)," V. L. Connor had deposited in the bank of appellee "$17,727.02." On January 10, 1921, V. L. Connor filed a voluntary petition in bankruptcy in the federal court at Dallas, and thereafter, on the 7th day of March, 1922, was finally discharged from all debts and claims. The appellee bank and R. E. Connor were the only unsecured creditors of the bankrupt, and each of them was paid 40 per cent. of their claims, which were duly filed in the bankruptcy proceeding. The bank demanded of R. E. Connor that he authorize the trustee in bankruptcy to pay his 40 per cent. to the bank; and the demand being refused, this suit was instituted. It appears further that R. E. Connor did not demand or seek to enforce payment by V. L. Connor of his indebtedness before January 10, 1921.

Neyland & Neyland, of Greenville, for appellant.

Clark & Sweeton, of Greenville, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellant assigns error upon the refusal of the court to give to the jury the following instruction:

"You are instructed that under the pleadings and evidence in the above cause no verdict can be rendered against the defendant R. E. Connor, and you are directed by the court to find a verdict in his favor."

The evidence is without dispute as to the following facts: (1) That the bank renewed the $2,000 note of V. L. Connor on July 3, 1920, and again on August 2, 1920, and again on September 1, 1920; (2) that the bank did not enforce payment of the $10,600 note of V. L. Connor when it was due on October 1, 1920, but on September 30, 1920, received $600 payment and by agreement with V. L. Connor, without the knowledge or consent of R. E. Connor, renewed it for $10,000 and extended the time of payment to December 31, 1920, and renewed it again by agreement with V. L. Connor on December 31, 1920, and extended the time of payment to January 29, 1921; (3) R. E. Connor did not demand or seek to enforce payment by V. L. Connor of his indebtedness before and until V. L. Connor was adjudicated a bankrupt on his voluntary petition in bankruptcy filed in the federal court on January 10, 1921; (4) that the bank and R. E. Connor were the only unsecured creditors in the bankruptcy, and they filed .their claims and were paid dividends less than the full amount of their debts. Entering a general denial, as the appellant did, to the allegations of a breach of his contract, the burden of proof was upon the bank to show that the appellant did breach the contract sued upon. And the question is that of whether or not the facts stated above show a breach by appellant of the contract sued on such as to subject him to liability for damages.

According to the terms of the instrument in suit, the "consideration" for its execution was "the credit extended to my son V. L. Connor by your bank," the appellee herein. The "agreement" or promise of appellant for the "consideration" recited was "that any indebtedness due said bank," evidently referring to the debts owed by the son, "shall be entitled to be paid in full before anything is paid on any indebtedness to me." In order to properly construe the agreement and determine the intention of the parties, the language used will be considered in connection with the conditions and circumstances under which the parties at the time were contracting. The circumstances show that the bank had previously extended to V. L. Connor "a line of credit"; that is, had loaned him money at different times upon the promise in writing to repay at a given future time. The amount of money loaned by the bank to V. L. Connor was evidenced by two notes; one for $2,013.75, due June 5, 1920, and one for $10,600, due October 1, 1920. The bank deemed itself insecure in the amount of the indebtedness owing, and was demanding of V. L. Connor that he reduce the indebtedness by payment of the note maturing June 5, 1920. V. L. Connor was asking the bank for an extension of time of payment of the note maturing. An agreement was reached between the bank and V. L. Connor by which the bank would renew the note of $2,013.75 maturing June 5, 1920, and extended the time of its payment for 30 days if V. L. Connor furnished a written financial statement and procured from his father and delivered to the bank the instrument in suit. The instrument was signed by the father and then delivered to the bank. At the time the father signed the instrument, V. L. Connor was also indebted, as the bank knew, to the father in two notes and an open account for money advanced, and the indebtedness was due and maturing. The father knew of the two notes owing the bank by his son, and of the maturity of the same. The foregoing indicates the difference between the bank and V. L. Connor to be that V. L. Connor wanted the $2,013.75, less interest due, renewed and extended for payment at least 30 days longer, while the bank wanted the $2,013.75 paid at its maturity or made more secure if renewed. The $10,600 was not due at the time, and its payment was not at the time being urged or pressed. Evidently from the facts the bank would not have agreed, and did not agree, with V. L. Connor to extend the payment of the maturing note of $2,013.75 without the desired instrument in suit signed by R. E. Connor, the father. The bank knew that its $10,600 note was not due and payment of it could not legally be insisted on at the time, and that the claims of R. E. Connor were due and maturing, and that R. E. Connor could insist on payment of his claims before the bank's claims of $10,600, as well as the $2,013.75 if extended, were collectible. It is further evident from the circumstances that R. E. Connor, in signing the instrument consenting for the bank to extend the $2,000 note for 30 days, was willing to forego his legal right to demand and insist upon payment by V. L. Connor of his due and maturing claims, and the advantage which such right gave him over the bank at the time, not alone for the 30 days, but until the time the bank could legally collect in full the $10,600 note, as well as the $2,000 note, in priority of R. E. Connor's claims.

[2] When viewed in connection with the

situation and condition between the parties, the language of the instrument in suit would quite clearly show the actual contract which the bank and the appellant intended to make and upon which their minds mutually met. The words "the credit extended to my son V. L. Connor by your bank" were intended to mean and to refer to the bank's extension of the time of payment by V. L. Connor of his $2,013.75 note from June 4 to July 5, 1920. The words "any indebtedness due said bank" were intended to mean and to refer to the two notes owing the bank by V. L. Connor— the one for $2,000 and the one for $10,600. The words "shall be entitled to be paid in full before anything is paid on any indebtedness to me" were intended to mean that the bank, should have the right to demand payment of and enforce collection against V. L. Connor of his existing indebtedness when such indebtedness was due and payable, and that R. E. Connor would forbear making demand and insisting on payment of his existing claims against V. L. Connor until the time that the bank's claims were legally collectible in full. In other words, the bank was agreeing to extend the $2,013.75 note of V. L. Connor and not enforce its payment for 30 days from June 4, 1920, if R. E. Connor would also agree to forbear enforcing his claims due and maturing at the time, until both of the bank's notes became due and collectible in full. The clear intention of the parties was that the time should begin and commence for the bank to demand and enforce the collection of its claims when they were due, not later than .October, 1920. There was no contract in the bank to change that date without assent of R. E. Connor. An agreement to forbear the exercise of a right where the forbearance is granted because of a return promise is a sufficient consideration to support, as has been held, an agrement either of the debtor or of a third person, where the creditor has in pursuance of such agreement actually forborne. Von Brandenstein v. Ebensberger, 71 Tex. 267, 9 S. W. 153; Armstrong & Co. v. Snyder, 15 Tex. Civ. App. 394, 39 S. W. 379. Hence the bank could only predicate liability on the instrument in suit if R. E. Connor collected his claims "before" the time the claims of the bank were legally collectible according to the intendment of the parties. But according to the undisputed evidence the bank did not avail itself of the right to enforce collection of its claims when due. On the contrary, the bank, without the knowledge or assent of R. E. Connor, agreed with V. L. Connor to extend the time of payment of both notes at the time these notes were maturing. The agreement between the bank and V. L. Connor for the several extensions was subsequent to the contract in suit, and upon a good consideration, and was binding on the bank and V. L. Connor. If the bank had the right to make the extensions of time of payment of the notes under the terms of the agreement in suit according to the intendment of the parties, then clearly R. E. Connor violated his part of the agreement when he collected the dividends from the trustee in bankruptcy as shown in the evidence. But if the bank contracted, as it did, with V. L. Connor to make the extensions mentioned without the legal right to do so under the agreement in suit, then R. E. Connor was not bound by the acts of the bank, and he could avail himself of the right to collect his claims after the bank failed, as it did, to enforce payment by V. L. Connor of his indebtedness to it when the last note was collectible in October, 1920. It is reasonable to infer from the circumstances at the time of the execution of the instrument in suit that the indulgence of time the bank should give V. L. Connor on his notes was meant to extend only to the first extension from June 4 to July 5, 1920. The only promise of the bank at the time was to grant indulgence on the $2,013.75 note for 30 days, and it was contemplated by the parties that R. E. Connor should forbear collection of his claims only until the bank was in a legal position to enforce collection of all its claims. The bank was in such legal position on October 1, 1920. That agreement of extension for the first 30 days could not have been intended for the further extension of time of payment, nor for a series of extensions from time to time, indefinitely, so that the bank and V. L. Connor could, at their pleasure, always prevent R. E. Connor from enforcing payment of his claims, or even using the statute of limitation as a defense. Such a construction of the written instrument with such consequences cannot be adopted without a clearly expressed intention to that effect in the instrument itself. The time intended for V. L. Connor to make payment, and the time the bank was intended to enforce the payment of the notes, was at the maturity of the same in July and October, 1920. Consequently the agreement on the part of the bank according to the intendment of the parties was not met and satisfied when the bank agreed to the several extensions, instead of enforcing collection of the notes when due. Failing to begin to enforce collection in October, 1920, as the bank did, when it could legally have done so, had the effect under the agreement of authorizing R. E. Connor to enforce payment of his claims without subjecting himself to a liability for violation of his contract. It was contemplated by the parties that as soon as the debts of the bank were due and collectible by the bank the debts of R. E. Connor might be paid, if the bank did not act on its right of prior collection at the time intended by the parties.

The judgment is reversed and here rendered in favor of the appellant, with costs

of the trial court and of appeal. The judgment as to V. L. Connor will remain undisturbed.

Reversed and rendered.