ALAMO LUMBER COMPANY,
Petitioner,

v.

Addie B. GOLD, Respondent.

No. C–883.

Supreme Court of Texas.

Nov. 2, 1983.

Rehearing Denied Jan. 11, 1984.

Foster, Lewis, Langley, Gardner & Banack, Ralph Langley and Emerson Banack, Jr., San Antonio, Graves, Dougherty, Hearon & Moody, Robert J. Hearon, Jr. and Thomas I. Davies, Austin, for petitioner.

West & West, Dennis K. Drake, San Antonio, for respondent.

POPE, Chief Justice.

The question presented is whether Alamo Lumber Company charged usury to Mrs.

Addie Gold when Alamo purchased Gold's delinquent note for $75,000 plus interest and extended it, upon condition that Gold sign another note to Alamo for the payment of Stetson G. Reed's open account with Alamo. Gold sued Alamo for usury and Alamo counterclaimed for judgment against Gold on a note for $82,925.34 (Note 1). Note 1 was the total of the original Gold note for $75,000 together with interest that had accrued up to the time Alamo bought it. Alamo also counterclaimed on a separate note for $30,893.10 (Note 2), which was the amount originally owed by Mrs. Gold's son and the amount of attorney fees that Alamo paid the attorneys who had instituted foreclosure suit against Mrs. Gold. Both Note 1 and Note 2 were signed by Gold only. The trial court rendered judgment on the verdict that Gold take nothing on her usury action, and instead rendered judgment for Alamo on both notes together with interest.

The court of appeals reversed the trial court judgment and rendered judgment that Alamo had charged more than double the amount of interest permitted by statute. It remanded the cause to the trial court with instructions to impose the penalties allowable by TEX.REV.CIV.STAT. ANN. art. 5069–1.06. Those penalties were the forfeiture of the entire principal of $82,925.34 in Note 1, the forfeiture of the principal of $30,893.10 in Note 2; cancellation of the liens securing the two notes, a judgment for double the amount of interest which at time of trial was in the sum of $45,177.90, and attorney fees in the sum of $25,000. 623 S.W.2d 453. We affirm the judgment of the court of appeals.

On December 20, 1974, Gold executed a note, secured by realty in San Antonio, for $75,000 payable to First National Bank of Pleasanton. Mrs. Gold defaulted on the note to First National Bank, so the bank instituted proceedings to foreclose on the San Antonio realty securing the note. In the meantime, Stetson G. Reed, Mrs. Gold's son, had developed an unpaid open account with Alamo totaling $23,552.80.

Stetson G. Reed submitted a proposal to Alamo that Alamo purchase the Gold note owed to the Pleasanton bank and extend the payment date upon the condition that Gold also assume his open account. Alamo agreed, and on January 30, 1976, it purchased Note 1 for the sum of $82,925.34. On the same date, Mrs. Gold signed Note 2 for $30,893.10. Note 2 included the amount that Reed owed Alamo and the additional sum of $7,340.70 for fees that Alamo paid the attorney for the holder of Note 1 in connection with the foreclosure proceedings. To secure Note 2 Alamo took a second lien on the same property that secured Note 1. Both Note 1 and Note 2 recited an interest rate of nine and one-half percent, so the notes were not usurious on their face.

The jury found that as a condition for Alamo's purchase of the $75,000 note from Pleasanton National Bank and extending its due date, Alamo required Gold to assume or pay the debt that Stetson G. Reed owed Alamo. The jury, however, refused to find that Alamo intended to charge or contract for usurious interest in the transaction. We granted the writ to determine the force and effect of these two findings. We conclude that the court of appeals has given the correct legal construction to both findings. Alamo's requirement that Gold assume Reed's independent open account as a condition to Alamo's purchase and extension of Note 1 made the $23,-552.80 interest as to Gold.

An officer for Alamo testified that the Alamo Lumber Company would not have purchased and extended Note 1 without Gold's assumption and agreement to pay Note 2. Contrary to Alamo's argument before us, Gold's execution of Note 2 was not an independent collateral transaction. The assumption by Gold of Reed's bad debt was expressly tied to Alamo's purchase of Note 1. That portion of Note 2 that constituted

the assumption of Reed's debt is characterized as interest under *Laid Rite, Inc. v. Texas Industries, Inc.*, 512 S.W.2d 384, 389 (Tex.Civ.App.—Fort Worth 1974, no writ). That case did not reach this court, but *Stephens v. First Bank and Trust of Richardson*, 540 S.W.2d 572 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.) relying upon *Laid Rite, Inc.* did. In *Stephens* we approved the judgment for usury when a lender requires a borrower to pay the debt that a third party owes the lender. The rule is supported by authorities in other jurisdictions. In *Laid Rite, Inc.* some of those precedents are collected: *Darden v. Schuessler*, 154 Ala. 372, 45 So. 130 (1907); *Curtiss National Bank of Miami Springs v. Solomon*, 243 So.2d 475 (Fla.App., 1971); *Simpson v. Charters*, 188 Ga. 842, 5 S.E.2d 27 (1939); *Winder Nat. Bank v. Graham*, 38 Ga.App. 552, 144 S.E. 357 (1928); *Canal-Commercial Trust & Savings Bank v. Brewer*, 143 Miss. 146, 108 So. 424 (1926); *Ferdon v. Zarriello Bros., Inc.*, 87 N.J.Super. 124, 208 A.2d 186 (1965); *Vee Bee Service Co. v. Household Finance Corp.*, 51 N.Y.S.2d 590 (Sup.1944); and *Janes v. Felton*, 99 W.Va. 407, 129 S.E. 482 (1925).

We granted the writ in this case to determine the force of the jury's refusal to find that Alamo intended to charge or contract for usurious interest. Alamo argues that there is a difference between those cases in which the documents show on their face that usurious interest is charged and cases in which the documents are non-usurious on their face. Alamo says that an intent to charge usury is necessary in the latter instance. The evidence is undisputed and supports the jury finding that Alamo would not have purchased Note 1 and given Mrs. Gold additional time to pay it off if she had not assumed Reed's debt by signing Note 2. Alamo's vice-president conceded that those were the conditions of its requirement before it purchased Note 1. We held in *Cochran v. American Savings & Loan Association*, 586 S.W.2d 849 (Tex.1979), that it is not the lender's subjective intent to charge usury that makes a loan usurious, but rather his intent to make the bargain that was made.

We hold that a lender who requires as a condition to making a loan, that a borrower assume a third party's debt, as distinguished from a requirement that the borrower pay another one of his own debts, must include the amount of the third party's debt in the interest computation. At the time of trial, the computations showed that Alamo charged Gold a sum of $45,177.90 as interest which was $27,124.70 in excess of the lawful rate, and was $9,071.50 in excess of double the maximum amount of lawful interest.

We affirm the judgment of the court of appeals.

BARROW, J., dissents joined by CAMPBELL and WALLACE, JJ.

## ON MOTION FOR REHEARING

BARROW, Justice, dissenting.

I respectfully dissent. I would hold that a distinction should be recognized between those instances in which the usurious nature of a loan transaction appears from the face of the loan documents and those in which the usury is evident only after going behind the face of the loan documents. In the latter case, I would require a showing of usurious intent on the part of the lender. In addition, I disagree with the majority's adoption of the rule from *Laid Rite, Inc. v. Texas Industries, Inc.*, 512 S.W.2d 384 (Tex.Civ.App.—Fort Worth 1974, no writ). The *Laid Rite* court failed to correctly state and apply the rule upon which it relied for its decision. The majority perpetuates this error by its holding.

### The Role of Intent in Usury Cases

Beginning as early as *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935 (1935), the role of intent in a usury case has been stated as follows:

The determination of whether or not usury exists in a contract is a matter involving first and preeminently the principle which is the polestar of construction, to wit: The ascertainment of the dominant purpose and intention of the parties embodied in the contract, interpreted as a whole, in the light of the attending circumstances and the governing rules of law which presumptively they intended to observe and obey in making the contract.

It is fundamental that to constitute usury there must exist an intention to exact more for the use, forbearance, or detention of money than the maximum allowed by law. Of course where the contract "upon its very face imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent."

*Id.* at 936. In this manner, the Court established that intent is always important, but it may be found to exist as a matter of law if the very face of the loan instruments provide for usury.

The holding in *Walker* is an established aspect of Texas jurisprudence and has been followed in numerous cases. *See, e.g., Carbajal v. Ford Motor Credit Co.,* 658 S.W.2d 281, 284 (Tex.App.—Corpus Christi 1983, writ dism'd w.o.j.); *Rotello v. International Harvester Co.,* 624 S.W.2d 249, 251–52 (Tex. App.—Dallas 1981, writ ref'd n.r.e.); *Prestonview Co., Ltd. v. State Mutual Investors,* 581 S.W.2d 701, 703 (Tex.Civ.App.— Dallas 1979, writ ref'd n.r.e.); *American Century Mortgage Investors v. Regional Center, Ltd.,* 529 S.W.2d 578, 583 (Tex.Civ. App.—Dallas 1975, writ ref'd n.r.e.); *Hernandez v. United States Finance Co.,* 441 S.W.2d 859, 862 (Tex.Civ.App.—Waco 1969, writ dism'd w.o.j.); *Sinclair v. Mack Trucks, Inc.,* 355 S.W.2d 563, 565 (Tex.Civ.App.— Fort Worth 1962, writ ref'd n.r.e.).

In addition, this Court has recognized the viability of *Walker* in cases arising after changes in the usury statutes. *Smart v. Tower Land and Investment Co.,* 597 S.W.2d 333, 340–41 (Tex.1980); *Tanner Development Co. v. Ferguson,* 561 S.W.2d 777, 781 (Tex.1977); *Wall v. East Texas Teachers Credit Union,* 533 S.W.2d 918, 921 (Tex. 1976). The majority errs in impliedly overruling these and numerous other cases without giving consideration to the far-reaching ramifications of its holding.

The majority bases its holding on *Cochran v. American Savings and Loan Association of Houston,* 586 S.W.2d 849 (Tex. 1979), in which this Court wrote:

Intent in usury cases does not mean intent to charge a usurious rate of interest. Rather, it means intent to make the bargain made.... The subjective intent of the lender is irrelevant if, in fact, the lender has contracted for, charged or received interest on a loan in excess of the maximum permitted by law.

*Id.* at 850. The Court's authority for this holding was *Miller v. First State Bank,* 551 S.W.2d 89 (Tex.Civ.App.—Fort Worth 1977), *aff'd as modified, First State Bank of Bedford v. Miller,* 563 S.W.2d 572 (Tex. 1978). Both *Miller* and *Cochran* involved instances in which the usurious nature of the transaction was apparent from the very faces of the loan documents. Thus, the rule set forth in *Walker v. Temple Trust Company* was satisfied without the necessity of going behind the faces of the loan documents to prove usury.

Courts in other jurisdictions have noted the importance of ascertaining the intentions of the lender in those cases in which the usurious nature of the transaction is not apparent from the face of the loan documents. *See Schreiber v. Thistle, Inc.,* 108 Misc.2d 333, 437 N.Y.S.2d 596 (S.Ct.1981); *McCullough v. Snow,* 78 N.M. 455, 432·P.2d 811 (1967) (per curiam). *See generally* 31 A.L.R.3d 763, 796.

Under our record, the issue of intent should be resolved by the jury. Stetson Reed, the son of Mrs. Gold, began as a Mobil consignee around 1972. In connection with that venture, Stetson opened an account at Alamo Lumber Company in the name of "Stetson G. Reed for Mrs. Gold."

Among other things, the account was used to charge materials used to remodel the house in which Mrs. Gold and Stetson lived. A portion of the charge account was for purchases made by Mrs. Gold, and she had picked up materials at Alamo on at least one prior occasion. The primary use of the account was to purchase materials for the construction of the Mobil station and related structures. Stetson needed funds to continue in his venture, so Mrs. Gold borrowed $75,000 from the bank in Pleasanton and gave it to her son. Stetson negotiated this note with the bank and paid for the appraisal of the land that was to be used as collateral. In addition, the land on which the buildings were placed was the subject of an earlier gift by Mrs. Gold to Stetson.

Later, Stetson proved incapable of paying off the note, but he did manage to secure an extension. After the note again became delinquent, the bank began foreclosure proceedings on Mrs. Gold's property. Alamo was not involved in any way in this indebtedness up to this point. There is a dispute in the evidence as to who initiated the negotiations between Alamo and Stetson that ultimately led to Alamo agreeing to purchase Bank's note. In any event, Mrs. Gold's end of the transaction was handled by Stetson. Alamo wished to obtain payment on the open account used by Stetson, and Stetson and Mrs. Gold wished to avoid foreclosure on the bank's note. Stetson submitted a proposal to Alamo that Alamo purchase the Gold note owed to the Pleasanton bank and extend the payment date on the condition that Mrs. Gold would execute a second note for the amount owed on the open account. Neither of these notes were usurious on their face.

Both Stetson and Mrs. Gold failed to make any payments on the notes held by Alamo. The $75,000 note was extended not once, but twice—both times at the insistence and urging of Stetson alone. The final default occurred on January 20, 1976, and this lawsuit arose shortly thereafter.

The final bit of evidence that is relevant to the relationship between Stetson and Mrs. Gold concerns the Mia Oil and Gas Company. This corporation was formed on March 29, 1976 with a loan of $125,000 from the First National Bank of Alice. The note used to start Mia was signed by Mrs. Gold and Stetson. Mrs. Gold was the sole stockholder, and Stetson was president and manager. Mia was formed to run the Mobil station formerly owned by Stetson, but Stetson later became ill and the corporation ceased to do business and was liquidated by its creditors.

These facts do not support the adoption of an unalterable rule that dispenses with any inquiry into the intent of the lender. I would follow the holdings in *Schreiber v. Thistle, Inc.*, 108 Misc.2d 333, 437 N.Y.S.2d 596, and *McCullough v. Snow*, 78 N.M. 455, 432 P.2d 811, that in cases such as this, the jury should be free to determine the intentions of the parties to the transaction and that an absence of wrongful intent on the part of the lender will vindicate him. The court must keep in mind that this statute is penal in nature and is to be strictly construed. *First State Bank of Bedford v. Miller*, 563 S.W.2d at 577. In addition, the court must give the statute a reasonable construction that comports with the underlying legislative intent. *Southwestern Investment Co. v. Mannix*, 557 S.W.2d 755, 769 (Tex.1977). Therefore, it is my opinion that the majority is incorrect in failing to give sufficient consideration to the element of intent in the transaction and failing to allow this factual determination to be made by the jury. The unchallenged jury finding of no usurious intent should control the disposition of this case.

*Assumption of Third Party Obligation:
The Effect of New Consideration*

Intertwined in the intent question is the holding of the majority that the assumption, by the borrower, of the debt of another that is owed to the lender constitutes interest. This conclusion is based upon *Laid Rite, Inc. v. Texas Industries, Inc.*, 512 S.W.2d 384, and *Stephens v. First Bank and*

*Trust of Richardson,* 540 S.W.2d 572 (Tex. Civ.App.—Waco 1976, writ ref'd n.r.e.). The majority does not discuss the rationale of these cases nor does the majority provide any guidance as to the proper application of this rule.

The majority emphasizes that this Court approved the judgment in *Stephens* by refusing that case's writ of error, no reversible error. The court of appeals did state the rule of *Laid Rite.* This was dicta, however, as the court of appeals concluded that the lender had not required the borrower to assume the debt of a third party as a condition to making a loan. The court of appeals affirmed the trial court's summary judgment in favor of the lender, and this Court also approved that judgment. Thus, the action by this Court with regard to the writ of error in *Stephens* should not be interpreted as approving the holding or the language in *Laid Rite.*

In *Laid Rite, Inc. v. Texas Industries, Inc.,* 512 S.W.2d 384, the court wrote:

There are many cases that hold that where a lender, as a condition of a loan and as a consideration for making it, requires the borrower to assume or pay in whole or in part, the debt that another owes to this same lender; that the amount of the assumed or paid-off debt will be considered as interest in determining whether or not the loan is usurious [citations omitted].

*Id.* at 389.

The court of appeals cited several foreign cases in support of the rule it adopted. It is unfortunate that the court of appeals incorrectly paraphrased the rule announced in the cases it relied upon. An accurate statement of the rule was made in the cited case of *Vee Bee Service Co. v. Household Finance Corp.,* 51 N.Y.S.2d 590 (S.Ct.1944), aff'd, 269 App.Div. 772, 55 N.Y.S.2d 570 (1945), as follows:

[W]here a borrower is required, as a condition of the loan, to assume or pay, in whole or in part, the debt of another, in addition to legal interest, the transaction is usurious, *unless the borrower receives something of benefit for the additional assumption or payment, aside from the use of the money loaned.*

*Id.* at 602 (emphasis added).

The presence or absence of additional consideration is a key factor in cases arising in this context, for the rule is inapplicable if the borrower fairly may be said to have received some consideration in addition to the money lent. A lender may, without violating the usury law, make an extra charge for any distinctly separate and additional consideration other than the simple lending of the money. *Ross v. Walker,* 554 S.W.2d 189, 190 (Tex.1977); *Greever v. Persky,* 140 Tex. 64, 165 S.W.2d 709, 712 (1942); *Ware v. Paxton,* 266 S.W.2d 218, 223 (Tex. Civ.App.—Eastland 1954, writ ref'd n.r.e.). Therefore, "where an excess over the legal interest is paid, or contracted to be paid, for other good and valuable considerations beyond the mere use of money, it is not usury." *Simpson v. Charters,* 188 Ga. 482, 5 S.E.2d 27, 31 (1939); *see also Stedman v. Georgetown Savings & Loan Ass'n,* 595 S.W.2d 486, 488 (Tex.1979).

Other authorities relied upon by the *Laid Rite* court and the majority recognized the significance of determining if additional consideration was received by the borrower in exchange for the assumption of another's debt. *Darden v. Schuessler,* 154 Ala. 372, 45 So. 130, 131 (1907); *Winder National Bank v. Graham,* 38 Ga.App. 552, 144 S.E. 357, 358 (1928); *Canal-Commercial Trust & Savings Bank v. Brewer,* 143 Miss. 146, 108 So. 424, 429 (1926); *Ferdon v. Zarriello Brothers, Inc.,* 87 N.J.Super. 124, 208 A.2d 186, 189 (1965); *Vee Bee Service Co. v. Household Finance Corp.,* 51 N.Y.S.2d 590, 602; *Janes v. Felton,* 99 W.Va. 407, 129 S.E. 482, 484 (1925).

Additional consideration for the execution of the second note was present under the facts of this case. Mrs. Gold had received notice that the Pleasanton bank was preparing to foreclose on her property and

sell it pursuant to its deed of trust. In exchange for Alamo's agreement to save Mrs. Gold from the threat of foreclosure, the parties agreed that Mrs. Gold would assume the note held by Alamo against Stetson. It is the law in Texas that a court may take judicial notice that property is worth more at a private, arms-length sale than at a forced sale under a deed of trust. *Stokes v. Pearce,* 285 S.W.2d 475, 478 (Tex. Civ.App.—Eastland 1955), *aff'd,* 155 Tex. 564, 291 S.W.2d 309 (1956).

Each party to this transaction received consideration in two separate ways. Mrs. Gold received the use of the $75,000 principal on the original note for an additional year; in payment for this extension, Mrs. Gold was to pay one year's interest on the note. The second aspect of this transaction is that Mrs. Gold signed the second note, which evidenced her agreement to assume the pre-existing indebtedness owed Alamo by Stetson. The obligation by Mrs. Gold on the second note correlated with the consideration received by Mrs. Gold in the form of avoiding the economic loss of a forced sale. The value, to Mrs. Gold, of avoiding the forced sale is the difference between the fair market value of the collateralized property and the depreciated value of that property at a forced sale.

The policy underlying this form of consideration has long been a concept recognized by Texas law. In *Von Brandenstein v. Ebensberger,* 71 Tex. 267, 9 S.W. 153 (1888), this Court held: "There can be no doubt that an agreement to forbear to prosecute to enforce a well-founded claim in law or equity is a sufficient consideration to support the promissory note of the debtor, *or of a third person,* where the creditor has, in pursuance of such agreement, actually forborne." *Id.* (emphasis added); *see also Wortham v. Lake Jackson State Bank,* 435 S.W.2d 612, 613 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *Dyer v. Metallic Building Co.,* 410 S.W.2d 56, 58 (Tex.Civ.App.—Tyler 1966, no writ); *Connor v. Greenville National Exchange Bank,* 252 S.W. 329, 332 (Tex.Civ.App.—Texarkana 1923, writ ref'd).

These cases support the conclusion that consideration may be found in an agreement, by the lender, to forbear from foreclosing upon the borrower's collateral, and this consideration will support a new and independent obligation by the borrower, or a third person. *Accord Leonard v. Texaco, Inc.,* 422 S.W.2d 160, 165 (Tex.1967); *Anderson v. Ladd,* 131 Tex. 479, 115 S.W.2d 608, 611 (1938); *Bonner Oil Co. v. Gaines,* 108 Tex. 232, 191 S.W. 552, 553 (1917); *Sutton v. Schoellkopf,* 62 S.W.2d 318, 321 (Tex.Civ.App.—El Paso 1933, writ ref'd); *Russell v. Lemons,* 205 S.W.2d 629, 632 (Tex.Civ.App.—Amarillo 1947, writ ref'd n.r.e.).

Finally, consideration for a contract need not flow directly between the contracting parties; on the contrary, it does not matter from whom or to whom consideration flows, so long as benefit or detriment exists on both sides of the agreement. *Hovas v. O'Brien,* 654 S.W.2d 801, 803 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Loomis v. Skillerns-Loomis Plaza, Inc.,* 593 S.W.2d 409, 411 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

In this case, there can be no doubt that Mrs. Gold received some consideration by being saved from foreclosure, and her son, Stetson, also benefitted from her actions. Thus, consideration flowed from Alamo to both Mrs. Gold and Stetson. I would hold that this consideration was sufficient to support the execution, by Mrs. Gold, of the second note. Further, the fact that Mrs. Gold did receive consideration brings this cases within the rule previously set forth and precludes a holding by this Court that this transaction was usurious.

I would reverse the judgment of the court of appeals and affirm that of the trial court.

CAMPBELL and WALLACE, JJ., join in this dissent.