**Richard L. WILGUS & Evans–Smallwood, Inc.,**
**Appellants,**

**v.**

**Jack H. GREEN & Levonia**
**D. Green, Appellees.**

**No. 12–92–00398–CV.**

Court of Appeals of Texas,
Tyler.

May 31, 1994.

Rehearing Denied Aug. 30, 1994.

Kenneth Ross, Longview, for appellants.

John L. Price, Center, for appellees.

HOLCOMB, Justice.

This appeal is taken from a judgment *non obstante veredicto* after a jury verdict in favor of the Appellants on their counterclaim of usury. We will affirm.

Jack and Levonia Green (collectively "Green") owned and operated J & L Marina which is located on Toledo Bend Reservoir in Louisiana. In 1979, they sold the Marina to

Emmett W. Smallwood, Jr., Geraldine Evans Smallwood, Charles I. Evans, and Denise M. Evans. The consideration was $60,000 cash and a note for $290,000, dated October 22, 1979, payable to Green, signed by the buyers in their individual capacity, which was further secured by a mortgage and vendor's lien. Evans and Smallwood then formed Evans–Smallwood, Inc., a Texas corporation to operate the marina under the name "J & L Marina." Though some interest was paid on the note over the next few years, nothing was applied to the principal. At some point, Smallwood bought all of Evans' stock in Evans–Smallwood. Under threat of foreclosure, Emmett W. Smallwood, Jr. and "Evans–Smallwood, Inc., dba J & L Marina" signed a foreclosure settlement agreement with Green on June 13, 1985. This agreement provided that in return for Green's forbearance, Evans–Smallwood, Inc. agreed to pay all delinquent interest, two payments on the note, and attorney's fees. On July 22, 1987, Wilgus enters the picture by purchasing 600,000 shares of Evans–Smallwood, Inc. for $60,000.00 from Smallwood. In September 1987, after Wilgus made the August 1987 payment, Green's attorney wrote Wilgus and asked him to send any documents showing that the company had assumed the note that had been signed by Evans and Smallwood individually. The letter also informed Wilgus that he was not shown as having an interest in J & L Marina and unless he paid the note or showed he had an obligation on the note, Green would not be required to give him any notice before foreclosure. Payments were made by Evans–Smallwood, d/b/a J & L Marina, in August and September, and a partial payment in October 1987, but each was late. As a result, Green sent a notice of acceleration and demand for payment in full to Wilgus, individually, and Evans–Smallwood, Inc.

Thereafter, Green brought a foreclosure action in Louisiana against the Evans and Smallwoods, the individual obligors on the note, and secured a judgment for $244,744.44, the unpaid principal due as of the date of the demand letter, plus interest and attorney's fees. Green also brought an action in foreclosure and evicted Wilgus from the marina. After non-suiting an action against Wilgus in Louisiana, Green brought this suit against Wilgus individually, and Evans–Smallwood, Inc., for damages of $58,863.14, which represented the payments due on the note for the fourteen months Wilgus operated the marina. Green alleged that Wilgus and Evans–Smallwood Inc. had agreed to make payments under the foreclosure settlement agreement, or alternatively that Wilgus was unjustly enriched by the use of the marina for fourteen months without paying anything to Green. Wilgus counterclaimed that by demanding that the note be paid by Wilgus or Evans–Smallwood Inc., Green was charging usurious interest and sought damages under TEXAS REVISED CIVIL STAT.ANN. art. 5069–11.10(a) (Vernon 1987). The jury, by confused and arguably contradictory answers, found that Green had charged usurious interest by demanding payment of the note in October, 1987, and by their pleadings. Green moved for judgment *n.o.v.*, arguing that there was no evidence of usury; the motion was granted by the court. The resulting judgment ordered that both parties take nothing, taxing costs to Green. From this judgment *n.o.v*, Wilgus appeals.

■ Wilgus brings six points of error. In four of his points, Wilgus argues that judgment *n.o.v.* was error because there was sufficient evidence to support the jury answers. These points are irrelevant to an attack on a judgment *n.o.v.* because the only question is whether there was any evidence to support the jury's answers. TEX.R.CIV.P. 301. By point of error four, Wilgus argues that Green failed to object to the submission of the questions to the jury and has waived error. A judgment *n.o.v.* is only available if there is no evidence and a "no evidence" point of error is not waived when brought to the court's attention by a motion for judgment *n.o.v.* By point of error one, Wilgus argues that judgment *n.o.v.* was error because "there were material facts raised by the evidence supporting the jury's findings."

Wilgus argues that when Green signed the foreclosure settlement agreement, Green required Evans–Smallwood, Inc. to assume a debt owed by another, and that such assumed debt was usurious interest. *Alamo Lumber Co. v. Gold*, 661 S.W.2d 926 (Tex.

1984) *(if a borrower is required to assume the debt of another in order to borrow money, then the assumed debt is considered interest).* Alamo Lumber had a customer who could not pay a debt owed to them. This customer's mother, Gold, owed money to a bank which had notified her of its intent to foreclose. The son convinced Alamo Lumber to buy the bank's note, consolidate his debt with his mother's, and extend the time Gold had to make payments on the "new" debt. The Court held that the assumed debt of the son was interest on Gold's loan. *Id.* at 927–28. Appellants argue that they have been charged usurious interest by being required to assume the debt of others, the Evans and the Smallwoods, who signed the original note individually.

██ The significant difference between *Alamo Lumber* and this case is that Appellants were not required to assume a second debt as a condition for borrowing money from Green. Green pled that Wilgus, individually, owed fourteen payments on the note for the time he operated the marina; but this was not as a requirement to making a loan. Thus, there is evidence that Green attempted to hold Wilgus liable on a note for which he was not individually liable, but there is no evidence that Green attempted to loan money to Wilgus to which this assumed debt would be considered usurious interest.

Green did attempt to obligate Evans–Smallwood, Inc. to make the payments on the note, but not as a condition to making a loan. Green, in forbearance of foreclosure, required the entity, Evans–Smallwood, Inc. to obligate itself to pay the note of its founders, the Evans and Smallwoods; one of which, at the time, owned all shares. In *Alamo Lumber,* Gold was required to assume the debt of another or suffer foreclosure. To that extent, Evans–Smallwood, Inc. was in a similar situation; Evans–Smallwood, Inc. had to assume the debt of another or suffer foreclosure. The similarity ends there. Evans–Smallwood, Inc. made no new loan nor restructured a previous loan to which the original note was added, as had Gold. To fall under the rule of *Alamo Lumber,* Evans–Smallwood, Inc. had to be a borrower when required to assume the debt of a third party.

*Id.,* 661 S.W.2d at 928. There was no evidence that Green and Evans–Smallwood, Inc. were in a lender-borrower relationship outside the single note in question, which Evans–Smallwood, Inc. had to assume.

The only evidence at trial was that Evans–Smallwood, Inc. had to assume a note at 10% interest, which is a legal interest rate. There was no evidence of usury. Because there was no evidence to support the jury's finding of usury, the trial court was correct in granting the motion for judgment *n.o.v.*

The judgment of the trial court is **affirmed and all costs in this Court are taxed to Appellant.**